**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Nathan STEIN, Defendant-Appellant.**

**No. 18296.**

United States Court of Appeals, Seventh Circuit.

Feb. 9, 1971.

Rehearing Denied March 2, 1971.

Philip R. Melangton, Jr., Indianapolis, Ind., for defendant-appellant.

Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Richard B. Buhrman, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., Stanley Miller, U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and PELL, Circuit Judges.

PELL, Circuit Judge.

Defendant Nathan Stein was indicted in two counts for wilfully attempting to evade and defeat federal income taxes due and owing for the calendar years 1962 and 1963, in violation of Section 7201 of the Internal Revenue Code of 1954, 26 U.S.C. § 7201. Following a trial by jury, Stein was found and adjudged innocent as to the 1962 count but guilty as to the 1963 count. The court imposed a fine of $2500 plus costs and a prison sentence of one year. From this judgment and sentence defendant has appealed.

Defendant had been engaged in the business of buying and selling meat at

wholesale in Indianapolis, Indiana since 1956. He employed an accountant to keep his books and prepare his tax returns, both on a cash basis. The accountant worked with sales figures supplied by Stein which the accountant did not independently verify. Stein was a calendar year taxpayer.

Revenue agents first examined defendant's books in March 1964, and a special agent was assigned to the case in May 1964. The agents reconstructed defendant's income for 1963 on the bank deposits method. From his total deposits plus cash expenditures equalling $394,668.11, they subtracted $18,428.12 in non-income deposits. After subtracting defendant's cost of goods sold, a gross profit from business of $78,747.08 remained. From this was subtracted his operating expenses, as well as various exclusions, exemptions and deductions, leaving a taxable income figure of $40,-545.13. Defendant's return for 1963 reported his taxable income as $1,833.90, an alleged understatement of nearly $39,000.

The bank deposit method of proving the understatement was followed exclusively by the government at trial. Any possibility of direct proof of defendant's income was eliminated when his sales invoices were allegedly destroyed by a fire of undetermined origins in his office during April 1965, nearly a year after the beginning of the investigation. Defendant testified that before the fire he had offered these invoices to the revenue agents but that they had not yet sought to examine them at the time of their destruction.

The government offered direct evidence of wilfulness in the testimony of Stein's former employee, Gerald Waterman. Over defendant's objection based on remoteness, Waterman testified that in 1962 he had a conversation with Stein in a restaurant during which Stein told Waterman that he, Stein, would have no hesitancy, with the assistance of his accountant and attorneys, about "cheating the Government as well as I would cheat anybody else, which includes my help, my customers."

On cross examination, Waterman admitted that he had not referred to this conversation in a signed statement given to revenue agents and that the only conversation mentioned in that statement was one in the presence of two other employees. Both of these employees denied knowledge of any such conversation. Defendant denied the conversation with Waterman. It was shown that Waterman had previously brought a suit against defendant which was dismissed and that he had applied for the 10% reward from the Internal Revenue Service.

The government rested on the basis of the bank deposit computation and Waterman's testimony.

Stein testified that in 1962 he had included $9,000 in year-end accounts receivable in his ending inventory, thus reducing cost of goods sold and increasing gross profits. He did not report the collection of these receivables in 1963 on the basis that he had already paid tax on them in 1962. There would not seem to be double taxation here since the 1962 ending inventory was carried forward as the 1963 opening inventory.

At the end of 1963, defendant's accounts payable would have exceeded his receivables and produced a negative inventory figure under his method of accounting. Defendant, assertedly feeling that some year end inventory had to be shown, solved the problem by not reporting collections of nearly $15,000 in receivables made during the last week of 1963, thus leaving this amount as ending inventory to be carried forward. Stein also instructed his accountant to post every expenditure after December 24, 1963 into 1964.

Defendant further sought to show the existence of over $9,000 in non-income deposits to his bank accounts during 1963 which had not been previously reported to the investigating agents.

The government conceded an additional $4,600 of unreported income was due to good faith accounting errors.

Thus, defendant sought to show that approximately $37,500 of the $39,000 understatement was due to non-income deposits and to good-faith errors and misconceptions of proper accounting techniques.

Defendant also introduced a computation of his income based on the net worth method. By this computation, his taxable income for 1963 was approximately $4,000 rather than the $40,545 alleged by the Government.

Finally, defendant presented evidence intended to show good faith and lack of wilfulness. His 1963 return was apparently filed after he was aware of the pending investigation. He gave his full cooperation to the investigating agents. There was no evidence of a double set of books. No hidden bank accounts were discovered. No unreported sources of income were shown. Of the four years subject to investigation, only two led to prosecution and only one to conviction.

■ Defendant's primary contention on this appeal is that the evidence was insufficient to prove his guilt beyond a reasonable doubt. We cannot agree. Of course, we do not weigh the evidence nor determine the credibility of witnesses. Given the verdict of guilty, we must consider the evidence in the light most favorable to the government's position. Glassner v. United States, 314 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

In tax evasion cases, a not uncommon attribute seems to be a lack of precise and clear recordation and documentation. The case before us is no exception. Whether the scarcity, murkiness or ambiguity of supporting data in any particular case is purposeful or merely inadvertent is no doubt often a matter to which the trier of fact gives some determinative consideration. In the trial forum there is the opportunity to observe and evaluate credibility. We, faced only with a cold record, must ordinarily give our credibility to resolutions of fact which follow the opportunity of direct observation available to, and presumably availed of by, the trier of fact.

■ Defendant first argues that the government's use of the bank deposit method was insufficient to show substantial unreported income in 1963. While unexplained deposits in excess of reported income is not alone proof of unreported income, it is "a rather convincing circumstance in support of the charge." Malone v. United States, 94 F.2d 281, 287 (7th Cir. 1938), cert. den. 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529. "Of course, proof under the bank deposit theory is circumstantial in nature, but we know of no reason why such deposits may not be considered in determining income, when there is no evidence that they represent anything other than income." United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956), cert. den. 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87.

However, Stein asserts that in the instant case there was no proof that all non-income items had been eliminated from the government's computation. Of course, the same could be said of any bank deposit case. But the record is clear that the agents made a thorough study of all leads provided by defendant and in every case gave defendant the benefit of the doubt in eliminating possible non-income items. No more is required. Holland v. United States, 348 U.S. 121, 135–136, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

Defendant also complains that all the non-income eliminations were based on a brief interview in which he attempted to recall non-income items merely by looking at a column of figures representing his deposits. However, nothing prevented defendant from giving the matter additional careful thought and contacting the agents as he thought of other items.

■ Further, this privilege of adducing proof of additional items of non-income character continued into the trial. Even at this late stage when Stein certainly must have been aware of the seriousness of that with which he was confronted, and conceding the credibility of his trial proofs, he was able to account

for only another $9,000 in non-income items to reduce the $39,000 understatement of income. There is no requirement that the government establish the exact amount of unreported income, as proof of a substantial sum will suffice. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943); United States v. Chapman, 168 F.2d 997, 1001 (7th Cir. 1948), cert. den. 335 U.S. 853, 69 S.Ct. 82, 93 L.Ed. 401.

Defendant further complains that the government's bank deposit proof was not corroborated by a net worth proof. However, we, like other circuits, have previously sustained convictions where the only proof of unreported income was a bank deposits analysis. United States v. Mansfield, 381 F.2d 961 (7th Cir. 1967), cert. den. 389 U.S. 1015, 88 S.Ct. 593, 19 L.Ed.2d 661. See also United States v. Procario, 356 F.2d 614 (2d Cir. 1966), cert. den. 384 U.S. 1002, 86 S.Ct. 1923, 16 L.Ed.2d 1015; United States v. Moody, 339 F.2d 161 (6th Cir. 1964); Hoyer v. United States, 223 F.2d 134 (8th Cir. 1955); Holbrook v. United States, 216 F.2d 238 (5th Cir. 1955), cert. den. 349 U.S. 915, 75 S.Ct. 605, 99 L.Ed. 1249; Graves v. United States, 191 F.2d 579 (10th Cir. 1951); and Stinnett v. United States, 173 F.2d 129 (4th Cir. 1949), cert. den. 337 U.S. 957, 69 S.Ct. 1531, 93 L.Ed. 1756.

Furthermore, this record is not completely without corroborating evidence. Stein introduced a net worth analysis which, with proper adjustments for omitted assets and for liabilities to family members not substantiated except by defendant's self-serving testimony, shows unreported income of over $9,000. This is certainly an amount substantial enough to establish the fact of unreported income.

We find it significant that while Stein complains of the government's reliance on the circumstantial evidentiary proof of bank deposits, a substantial aspect of this own defense was predicated on a net worth analysis, itself only circumstantial evidence, rather than a direct proof that the amount determined by the bank deposit method included other non-income items.

Insofar as Stein assayed at direct proof some of this at least would seem to have been sufficiently ambiguous as to have been questionable to the jury. An investment firm account executive, for example, testified that he could not say "for certain" that the exhibits in evidence were all of the checks paid by his firm to Stein in the years in question.

Stein also contends on appeal that the figure deducted as repayment of loans from one Profeta was not complete; however, the record reveals that while Profeta, a government witness, had lost most of his checks, the government brought out in his testimony the total number and amount of these checks.

Further, it must be noted that the net worth analysis exhibit put into evidence by Stein contains some variables such as year end value of securities which, of course, does not necessarily represent the amount of money invested therein during the course of the preceding year. Also, the government challenges the validity of the net worth analysis as it included trade accounts payable which the government asserts have no place therein as Stein was on a cash basis. While we have some difficulty in understanding why in preparing a financial statement, which is what the net worth analysis exhibit was, all liabilities including trade accounts payable should not be included, nevertheless, as we have already said, this exhibit was merely a different type of circumstantial evidence and the jury obviously chose to find it did not achieve persuasive credibility.

Finally, the government in preparing its bank deposit analysis, accepted Stein's affidavit as to the amount of business and living expenses paid by the defendant by cash rather than check. These expenses amounted to almost $15,000 and constitute some indication

of a cash flow outside of money actually deposited in banks.

Thus, we conclude that there was ample evidence showing the existence of substantial unreported income. However, defendant next maintains that there was insufficient evidence to establish that this failure to report income was the product of fraud rather than good faith misunderstanding. The jury had before it the same accounting explanations and the same evidence of good faith that defendant now presses upon us. It also had before it Waterman's testimony as direct evidence of wilfulness. We cannot now ignore its assessment of this conflicting evidence and its conclusion based thereon that defendant did act wilfully.

■ Defendant next asserts that the government's case was deficient in that there was no proof of the amount of tax paid by defendant in 1963 making it impossible to determine whether any tax remained due and owing. We agree with the government that the gist of the offense charged in the indictment was evasion of tax assessment rather than evasion of tax payment. *See* Sansone v. United States, 380 U.S. 343, 354, 85 S. Ct. 1004, 13 L.Ed.2d 882 (1965). Thus, the amount actually paid was irrelevant and the government was required to show only that defendant attempted to evade the assessment by fraudulently understating his taxable income on his return. We have previously found that the government met this burden.

■ Defendant further objects that venue was not proved. We find ample evidence in the record to indicate that the return was filed in Indianapolis, Indiana, within the Southern District of Indiana where defendant was prosecuted.

Stein further claims error in the trial court's instruction that capital losses incurred during 1963 should be added to any increase in net worth. In part, the defendant claims that the jury was in effect instructed to add the sum of $13,125.54. This figure, however, represented the capital loss carry-over available to defendant at the end of 1963 and consisted mainly of losses incurred by him prior to 1963. The instruction did not tell the jury to add this amount but only "any capital losses incurred during the year if any." This clearly limited the amount to $514.95.

■ Secondly, the defendant contended that the instruction was incorrect inasmuch as whether capital losses should be added to any increase in net worth was a disputed fact. Even if defendant were correct that this instruction was erroneous, any error would be non-prejudicial in light of the fact that his capital losses for 1963 amounted to $514.93. The addition of this amount in a case of this magnitude would be insignificant.

■ Defendant next alleges error in the denial of his motion to strike the testimony of Waterman as too remote. The trial court has broad discretion in such matters. Mitchell v. United States, 213 F.2d 951, 958 (9th Cir. 1954), cert. den. 348 U.S. 912, 75 S.Ct. 290, 99 L.Ed. 715 (1955). The record reveals careful consideration of the motion by the trial court and we find no abuse of discretion in its denial.

Defendant challenges various rulings of the trial court as unduly limiting the scope of cross-examination of government witnesses. Again, this is an area where the trial court has "traditionally wide latitude," United States v. Allegretti, 340 F.2d 254, 258 (7th Cir. 1964), cert. den. 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965), and Lisciandrello v. United States, 390 U.S. 908, 88 S.Ct. 830, 19 L.Ed.2d 876 (1968), and the record reveals nothing which we find to be an abuse of that discretion.

■ Defendant's final objection is to the admission of government's Exhibits 43 and 44, the summaries of the government's bank deposits reconstruction of his income and tax liability. All of the substantial challenges advanced by defendant to the use of such summaries have been long since considered and rejected by the Supreme Court, Holland v.

United States, *supra*, 348 U.S. at 130–132, 75 S.Ct. 127, 99 L.Ed. 150 and United States v. Johnson, *supra*, 319 U.S. at 519–520, 63 S.Ct. 1233, 87 L.Ed. 1546, and require no further discussion here.

Other contentions of Stein, not expressly dealt with herein, have been considered and found without merit. Accordingly, the judgment of conviction and sentence must be affirmed.

Affirmed.