Filippo CANDELA and Providenza Candela, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 80–1077.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1980.

Decided Dec. 4, 1980.

John Kennedy Lynch, Cleveland, Ohio, for plaintiffs–appellants.

Melvin E. Clark, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant–appellee.

Before WOOD and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

This appeal presents two issues: whether the taxpayers successfully overcame the Commissioner of Internal Revenue's determination of a tax deficiency; and whether the Commissioner established, by clear and convincing evidence, that these deficiencies were the result of fraud. The plaintiffs–taxpayers have the burden of proof on the first issue, the Commissioner on the latter. The District Court, after a bench trial, concluded that the taxpayers had failed to rebut the deficiency determinations, and that the deficiencies were the product of fraud. While we concur with the District Court's finding as to the deficiencies, we do not believe that the record supports a finding of fraud. We, therefore, reverse.

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

The plaintiffs, Filippo Candela and Providenza Candela, reside in Lomira, Wisconsin. They were married in 1925 and emigrated to this country from Italy the following year. The Candelas lived in Ohio at first and then moved to Wisconsin in 1939. In April of 1941 Filippo started working at the Grande Cheese Company. The Candelas and their two children, Antoinette and John, lived in a house owned by the cheese company. They paid no rent. Since there was no hotel in town, they would provide lodging for customers and suppliers of the cheese company, for which they were compensated by the company.

The Candelas apparently lived very frugally. Filippo worked seven days a week, and they did not mix socially with other members of the community. They grew their own vegetables which served as a major source of their food. The Candelas did send their two children to parochial schools, and then on to college. Their daughter, Antoinette, testified that for seven years after she graduated from college and was working, she lived either at home or with relatives, and routinely sent a portion of her income home to her father.

In 1967 Filippo and his son John, who was approximately twenty–one years old, purchased the Grande Cheese Company from the Di Bella family for $60,000. Filippo paid for the stock of the company with a money order in the amount of $46,004.78, and a check from the Gourmay Cheese Company in the amount of $13,995.22. The check from Gourmay was a partial payment of a $20,000 debt owed by the Grande Cheese Company to Filippo. The money order was purchased with a $40,000 withdrawal from Filippo's checking account at the Brownsville State Bank, and the remaining $6,004.78 was in cash.

Filippo Candela never learned to read or write, nor did he learn much English. His daily contact was limited to his family and fellow workers at the cheese company. Thus, there was little need for English in his daily life. The preparation of Filippo's annual tax returns was handled by his barber until 1968. In 1968 the barber died, and

his return for that year and subsequent years was prepared by Herbert Hauptman, the accountant for the cheese company.

In April of 1975 the Commissioner sent the Candelas notice of a tax deficiency for the years 1967, 1968 and 1969. They paid the deficiencies together with penalties for fraud and, on November 29, 1976, instituted this action for a refund. The deficiencies asserted by the Commissioner were for $6,280.71 in 1967, $12,561.02 in 1968, and $13,547.00 in 1969. In addition, fraud penalties of 50% of deficiencies were assessed. The entire amount at issue, including interest, is $60,606.88.

It should be noted at the outset that the finding of fraud is crucial to the outcome of this case. Normally, the Commissioner is barred from assessing a tax deficiency more than three years after any part of such tax was paid. 26 U.S.C. § 6501(a). However, the three year limitation does not apply in cases where the taxpayer files a "fraudulent return with the intent to evade tax." 26 U.S.C. § 6501(c)(1). Thus, the Commissioner is barred from collecting anything unless he can establish the requisite fraudulent intent of the taxpayer. The standard by which fraud must be established is one of clear and convincing evidence. *Gromacki v. Commissioner*, 361 F.2d 727, 731 (7th Cir. 1966).

In the instant case, the Commissioner does not rely on any direct evidence to establish an understatement of income for the years in question. Rather, the Internal Revenue Service has employed a net worth method of determining income. Under that method a taxpayer's net worth is established as of the beginning of the period under scrutiny. This is done by subtracting the value of the taxpayer's liabilities from the value of his assets. Once the taxpayer's net worth for the beginning of the taxable period is determined, that figure is subtracted from his net worth for the following year. The difference is the taxpayer's income for that year. To determine income for subsequent years, the Commissioner simply subtracts the taxpayer's net worth at the beginning of the year from the end

of the year. Using this method the Commissioner determined that Candela's adjusted gross income for 1967 was $40,870.89 rather than the reported amount or $11,796.28; $54,421.19 for 1968 rather than $16,111.81; and $48,526.86 in 1969, rather than the $31,485.15 reported on that year's return.

The taxpayers' primary attack on the use of the net worth theory is that the initial figure for their net worth is erroneous, thus rendering each successive determination of annual income incorrect. The taxpayers claim that the Commissioner's initial net worth figure of $96,807.13 failed to take into account approximately $70,000 in cash on hand as of December 31, 1966. This cash was allegedly kept in a safe deposit box at the National Exchange Bank in Fond du Lac, Wisconsin; in another safe deposit box at the Brownsville State Bank in Lomira; and in a milk can in the basement of the Candelas' home. The source of the cash was allegedly savings over the years and money sent home by their daughter Antoinette prior to her marriage. According to the testimony of his son John, Filippo Candela kept large amounts of cash in his home out of a general distrust of banks based on his first hand experience of the 1929 depression.

In support of their cash hoard argument, the Candelas rely on Filippo's own testimony and the testimony of their son John regarding the large sums of money kept in the basement and in the safe deposit boxes; the testimony of Antoinette describing her contribution to the family income; the Commissioner's failure to consider additional income from providing room and board to visitors of the cheese company; and the fact that Filippo had over six thousand dollars in cash when he purchased the Grande Cheese Company in April of 1967. The Commissioner argues that based on the Candelas' income and expenditures between 1945 and 1967, they could not have saved $40,000 in that period.[1]

■ The District Court's finding that the taxpayers had failed to overcome the defi-

ciency assessments is based largely on credibility determinations. With the exception of Filippo Candela whose deposition was introduced, the District Judge had the benefit of observing the witnesses testify, and made findings as to their credibility. Credibility determinations are clearly within the province of the trier of fact. *United States v. Stein*, 437 F.2d 775, 778 (7th Cir. 1971). We find nothing in the record to suggest that the finding of deficiencies for the years in question is clearly erroneous.

Had this case been brought within the three–year period for civil tax deficiency suits, our review of the proceedings below would go no further. However, because the Commissioner's deficiency assessment is time barred unless fraud is established, we must focus on evidence relied upon to sustain the Court's finding of fraud.

■ The Commissioner contends that an understatement of income is "by itself indicative of fraud." However, the District Court did not rely on the understatements as demonstrated by the use of the net worth theory, and we believe rightly so. The Court found that the understatements of income had been established by the net worth theory to a "reasonable certainty." (Memorandum Opinion, p. 9) Yet, clear and convincing evidence of fraud requires more than that. While a consistent pattern of understatements can be persuasive evidence of fraud, *See e. g. Estate of Upshaw v. Commissioner of Internal Revenue*, 416 F.2d 737 (7th Cir. 1969), the quantum of evidence which establishes those understatements must also meet the clear and convincing standard if they are to sustain a finding of fraud.

■ The Court below did rely on three "indicators" in support of the finding of fraud. First, the District Court concluded that Filippo Candela possessed a "high degree of business acumen" sufficient to understand his tax obligations. While Filippo Candela may well have been knowledgeable about the production and sale of cheese, his

---

1. $70,000 less the $30,000 allegedly contributed by Antoinette.

acumen was limited to that field. The record before the District Court strongly suggests that Candela lacked any business expertise outside of the operation of a cheese factory.[2] He was illiterate and could not speak English very well. Up until the time he acquired the cheese company he retained his barber to prepare his tax returns for five dollars. He kept his money in milk cans and safe deposit boxes rather than in interest bearing accounts or investments. Candela had no formal education, and testified that he had no knowledge of mathematics. Candela appears to have had little knowledge or understanding of the tax laws. While this does not absolve him of his obligations under the law, it does suggest that the failure to report certain portions of his income was due to negligence or ignorance of the law rather than fraud.

Perhaps the most significant evidence of a possible fraudulent intent is Candela's sales of cheese purchased from the company. For several years prior to his acquiring Grande Cheese Company Candela would purchase significant quantities of Romano cheese from Grande which he would age and then sell to various retailers. He apparently kept no record of his profit or loss on these sales, though each sale was documented by a purchaser's invoice and a check for payment. Candela would deposit the checks received from these sales in his account at the Brownsville State Bank. He would occasionally make disbursements from that account to cover expenses such as his children's tuition and life insurance premiums. These sales took place in 1966 and 1967, though no profit or loss was reported on Candela's tax returns for those years.

The District Court relied heavily on this second indicator in finding fraud. The Court found that these sales occurred during "at least three of the years in question." Yet, evidence introduced by the Government (Exhs. J–1, J–2, and K–I) suggests that the sales of cheese stopped in mid–

1967, or, at the latest, early 1968. Candela's bank account records (Government Exh. K–I) on which the District Court specifically relied indicate that the deposits ceased in September 1967, and the account became inactive at that time. While the record reflects that Candela received a check for $2,500 in January 1968, and for $500 in June 1969, from the Costa Grocery (Government Exh. J–1), the corresponding statements indicate that these payments were for prior sales of cheese.

Candela's failure to keep adequate records and failure to report any profits or losses from his sales of cheese was clearly improper. However, the significant issue is whether his actions reflect an intent to evade taxes or ignorance of his obligations under the law. Several factors in the record indicate that Candela's practice of selling cheese on his own is not probative of any intent to evade or defeat his tax obligations.

First we note that Candela received checks from cheese purchasers rather than cash. He opened a bank account in the name of Filippo Candela & Co. at the Brownsville State Bank where he regularly deposited any checks he received. His purchases of cheese were documented on the books of Grande Cheese Company, and on the books of the retailers to whom he sold. Such documentation would not suggest a scheme to evade taxes. When Candela's lack of education and formal business training is considered in conjunction with his actions, it is difficult for us to conclude that he possessed the requisite intent to deceive and evade the tax collector.

The record also discloses that at the time these unreported sales of cheese were ongoing, Candela's tax returns were still being prepared by his barber. Since the barber died in 1968, and did not testify at trial, we cannot say whether the subject of income in addition to Candela's salary was ever dis-

---

**2.** It should be noted that Candela's credibility is not an issue here. His deposition was intro- duced, but he did not testify at trial.

cussed. Yet, it seems unlikely that the barber would know of these sales of cheese.[3]

The final "indicator" relied on by the District Court is that Candela kept money in an out–of–state bank account. Specifically, the Court was referring to $18,000 held in a savings account in Toledo, Ohio. This money was a repayment to Candela of a mortgage note on property in Ohio. The interest earned in that account was not reported on Candela's income tax return of the years in question. The form 1099s indicating the interest earned in the account were sent to the attorney who handled the sale of the property. He was located in Toledo. For some reason, the attorney returned the forms to the Toledo bank, rather than forward them to Candela.

We fail to see how keeping funds in an out–of–state bank would indicate fraud.[4] The failure to report the income from the account would be indicative of fraud had the Form 1099s been sent to Candela. However, the taxpayer's failure to determine his interest income by contacting the bank and securing the appropriate forms was no more than negligence, particularly in light of his limited understanding of English.

As we noted at the outset, the government has the burden to establish fraud by clear and convincing evidence in this case. We find little evidence in the record to support a finding of fraud. The Government's net worth analysis, while reasonable, is not convincing evidence of fraud. Aside from Candela's practice of selling cheese purchased from the company, the record is devoid of any affirmative act which would indicate an intent to evade taxes. Given Candela's background and limited education, we cannot conclude that this alone rises to the level of clear and convincing evidence of fraud. Rather, our perception

of Filippo Candela from this record is that of a man who was successful in his own field, but lacking even the most basic understanding of other aspects of the business world. His poor record keeping and failure to report income from his cheese sales was negligent and improper. But the Commissioner has failed to establish that it was the result of fraud.

The dissent finds the government's characterization of Candela's activities more convincing. While there is some evidentiary support for that view, we believe the clear and convincing standard requires a greater quantum of evidence to support a finding of fraud. The District Court's finding of fraud is clearly erroneous, and must be reversed. Accordingly, the Commissioner's assessment of a deficiency is time barred, and the taxpayers are entitled to a refund as a matter of law.

REVERSED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

The majority, in my opinion, gives the taxpayers an undeserved pass for the income taxes they fraudulently avoided paying.

It appears that Mr. Candela lived in this country for forty years without learning English, but he did learn how to make cheese and money. It is said that the taxpayers were frugal. That is ordinarily a worthy characteristic, but not if you are being frugal by not paying your income taxes.

Taxpayers' assets rose from about $99,000 to $228,000 between 1966 and 1969. Those assets included various bank accounts, a cheese inventory, savings bonds, accounts receivables, loans, a mortgage, a stockbro-

---

**3.** It is interesting to note that Mr. Herbert Hauptman testified that he was aware that Candela was probably selling cheese on his own through his review of the Grande Cheese Company books. When Hauptman prepared Candela's 1968 return in early 1969 he inquired about any such sales of cheese. He testified that he did not file a supplementary Schedule C

because he was satisfied that the sales had ceased.

**4.** Indeed, in response to a question from Judge Cudahy during oral argument, counsel for the Government backed away from that position, but suggested that the failure to report the interest income from the account was evidence of fraud.

ker deposit, real estate stocks, and farm machinery. Even though he could not speak English, Mr. Candela was obviously no babe in the economic woods.

Critical to the case is taxpayers' claim of $70,000 cash on hand for which the government gave them no credit in the net worth analysis. However, the taxpayers themselves have considerable difficulty trying to explain it. It is admitted by taxpayers in their brief that "[t]he source of the $70,-000.00 cash on hand of the plaintiffs cannot be demonstrated with exactness." "Doubtless," it is argued, "plaintiffs saved some cash over a period of forty years." The plaintiffs sum up their case by arguing that they have "shown a likely source of at least $30,000.00 from their daughter in the years prior to 1967, and a distinct possibility that plaintiffs may have saved or accumulated an additional $40,000.00 in the forty years prior to 1967, due to their abstemious ways." Those are not very strong or satisfying statements. Taxpayers claim, incidentally, that their cash hoard was kept in a can in the basement, plus in two safe deposit boxes. I am surprised that taxpayers by now have not thought up something original to claim besides just having a can full of money in the basement. These particular taxpayers at least distinguish their explanation by saying that their can full of money in the basement was a milk can, a container of impressive dimensions.

Let us also look at the $30,000 portion of that cash hoard which they attribute to their daughter. It is claimed that the daughter routinely sent a portion of her wages home to her father. Such filial assistance to aging parents can be most laudable. This, however, appears to be an exceptional case. The daughter claims that over a six–year period she sent home $30,-000 of her total income of $38,000. It is also exceptional that she was able to exist on what little she would have had left. The parents were doing very well without the need for such extreme sacrifices by their daughter. I wonder if the daughter realized that her wages were only headed for deposit in the milk can in the basement.

"Dutifully," it is argued, Mr. Candela took his records to his barber to do his tax returns. What he dutifully delivered, however, were incomplete records which did not reveal at least his additional income from cheese sales on the side and the interest received.

Judge Warren who heard taxpayers' story firsthand didn't believe it when weighed against the net worth analysis, and I don't either.