ERNEST ROLAND BARTLETT AND ETHEL BARTLETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bartlett v. Commissioner
Docket No. 19927-82.
United States Tax Court
T.C. Memo 1986-479; 1986 Tax Ct. Memo LEXIS 123; 52 T.C.M. (CCH) 653; T.C.M. (RIA) 86479; September 25, 1986. William T. Stone, for the petitioners. Scott Anderson, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1979
$6,993
$3,496
1980
6,603
3,301
After concessions *124 as set out in the parties' stipulation of facts, the issues remaining for decision are as follows: (1) Whether respondent properly determined the amounts of unreported income that petitioners received from illegal gambling activities; and (2) Whether petitioners are liable for the additions to tax under section 6653(b) for fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Ernest Roland Bartlett (Mr. Bartlett) and Ethel Bartlett (Mrs. Bartlett), husband and wife, resided in Williamsburg, Virginia, at the time they filed their petition in this case. Mr. and Mrs. Bartlett timely filed their joint 1979 and 1980 Federal income tax returns (Forms 1040) with the Internal Revenue Service Center in Memphis, Tennessee. At the time of trial, Mr. and Mrs. Bartlett were 56 and 54 years of age, respectively. Both have only a ninth grade education and have no knowledge of rudimentary business practices. The Bartletts have four children, all of whom resided with them throughout most of 1979. The second oldest son left home when he joined *125 the Army in November or December of 1979. Mr. Bartlett worked periodicallly during 1979 and 1980 and was in charge of the family finances, paying most of the household bills. Other than her illegal gambling activity, which will be discussed below, Mrs. Bartlett was not employed in either 1979 or 1980. However, the Bartletts' eldest son worked and helped out with the family bills. In addition, for six or seven months during 1980, the son in the Army arranged for the Bartletts to receive an allotment check in the amount of $75 each month. At times he also sent other money home to help with the family finances. Mr. Bartlett also regularly borrowed money from his employer to meet family expenses. As of the date of trial, he still owed money to his employer. During 1979, Mr. Bartlett worked as a cook for Colonial Williamsburg, a pancake house, and also worked for the Lobster House restaurant, both of which were owned by the same corporation. Mr. Bartlett's W-2 forms indicated that he earned $3,633.72 and $1,500 in 1979 from Colonial Williamsburg and the Lobster House, respectively. The Bartletts reported these amounts on their 1979 joint Federal income tax return. Mr. Bartlett's *126 W-2 form for 1980 indicated that he earned $3,075 from the Lobster House during that year. The Bartletts included this amount on their 1980 joint Federal income tax return. During the years 1979 and 1980, Mr. and Mrs. Bartlett also received some taxable income that they failed to report. In 1979, Mr. Bartlett received a total of $600 of additional income from Colonial Williamsburg and the Lobster House. That year, Mr. Bartlett occasionally received cash for working at Colonial Williamsburg that was not included on his W-2 form. He also worked overtime at the Lobster House in repayment for the money he had borrowed from his employer. The employer compensated him for this overtime by reducing the amount of his debt. The income received by Mr. Bartlett from both of these sources totaled $600. This amount was not included on either of Mr. Bartlett's W-2 forms for that year and he simply forgot to include it as income on the 1979 joint Federal income tax return. Mr. Bartlett volunteered this information to respondent's agent during the audit of petitioners' 1979 tax return. Also in 1979, Mrs. Bartlett won approximately $1,500 playing bingo that she failed to report. At that time *127 Mr. and Mrs. Bartlett did not know that bingo winnings were taxable income. However, in early 1981 they learned that bingo winnings were indeed taxable and they reported $1,250 of Mrs. Bartlett's 1979 bingo winnings on their 1980 joint Federal income tax return. [2] Mrs. Bartlett did not win any money from bingo in 1980. *128 During 1979 and 1980, both Mr. and Mrs. Bartlett received income from writing numbers for an illegal numbers game. They acted as agents for the person or persons in Newport News, Virginia, who actually operated the numbers game. Individuals wanting to play would place a bet with petitioners on a certain number. Petitioners would record the number and the amount of the wager on a slip of paper. Each day, someone picked up the slip of paper together with the money. When a number hit, petitioners received the payoff from those operating the game and passed it along to the person with the winning number. However, petitioners maintained no books or records to indicate the amount of income they earned from writing numbers. While petitioners were aware that the numbers game was an illegal activity, they were not aware that earnings from illegal activities were taxable income. In 1979, petitioners wrote numbers from September through December for a total period of approximately 18 weeks. Mr. Bartlett started writing numbers in September of 1979 and wrote numbers until the middle of October, at which time he became gainfully employed at Colonial Williamsburg, a pancake house. Mrs. *129 Bartlett then started writing numbers in the middle of October and wrote numbers for the remainder of the year, about 12 weeks. In 1980, either one or both petitioners wrote numbers from January through May for a total period of approximately 20 weeks. However, from March through May of 1980, approximately 12 weeks, both petitioners were engaged in writing numbers. Mrs. Bartlett wrote numbers continuously from January through May. Mr. Bartlett wrote numbers from March through May of 1980. During the weeks that Mr. Bartlett wrote numbers, in 1979 and 1980, he worked five days a week. Most of the time, he operated out of his car, usually parking near gambling joints and other such places. Each day, Mr. Bartlett retained 10 percent of the money he collected and turned in the rest with the recorded numbers. Mr. Bartlett ordinarily collected an average of $80 per day and retained about $8 a day or $40 per week as his compensation. During the weeks that Mrs. Bartlett wrote numbers in 1979 and 1980, she worked six days a week. Mrs. Bartlett operated out of her home, earning about $50 per week from writing numbers. She paid herself each Saturday by retaining $50 from the gross *130 receipts that she collected that day. In May of 1980, petitioners' residence was raided by law enforcement officials of the Commonwealth of Virginia. Mrs. Bartlett and the man waiting to pick up the numbers slips and the money were the only persons in the house at the time of the raid. Mrs. Bartlett was charged under state law with operating an illegal gambling enterprise. A person or persons unknown hired an attorney to represent Mrs. Bartlett and paid his fee for doing so. On the advice of her attorney, Mrs. Bartlett pleaded guilty on July 22, 1980, to operating an illegal gambling enterprise. The Circuit Court for the City of Williamsburg and County of James City sentenced Mrs. Bartlett to a two-year suspended sentence and placed her on probation for three years. She was also required to pay a fine of $1,000. [3] After the raid in May of 1980, neither Mr. Bartlett nor Mrs. Bartlett wrote numbers for the rest of 1980. [4]
*131 Petitioners used professional income tax preparers to fill out their 1979 and 1980 tax returns. In 1979, they used H & R Block and in 1980, they used HFC Income Tax Services. On their 1979 joint Federal income tax return, petitioners reported gross income in the amount of $5,134, consisting entirely of Mr. Bartlett's W-2 wage income from Colonial Williamsburg and the Lobster House. On their 1980 joint Federal income tax return, petitioners reported gross income in the amount of $4,325. [5]
In a statutory notice of deficiency dated May 7, 1982, respondent determined that petitioners had unreported income in the amounts of $26,716 and $24,616 for the taxable years 1979 and 1980, respectively. Petitioners' unreported income as determined by respondent for 1979 included Mrs. Bartlett's bingo winnings of $1,500, Mr. Bartlett's extra income of $600, and profits of $24,616 from operating a numbers game. For 1980, the unreported income of $24,616 as determined *132 by respondent consisted entirely of profits from the numbers game. This profit figure of $24,616 for each year was based on an average daily gross receipts figure of $415.26. Respondent extrapolated this amount over each year using 6 days per week and 52 weeks per year to determine yearly gross receipts of $129,561.12. Respondent then used a profit percentage of 19 percent to arrive at the unreported income from operating the numbers game for each year. [6] Respondent also determined that all or a part of the resulting underpayment of tax in each year was due to fraud, and therefore determined an addition to the tax under section 6653(b) for each of the years in issue. OPINION Unreported Income
Petitioners have conceded *133 that on their 1979 joint Federal income tax return they failed to report Mrs. Bartlett's bingo winnings in the amount of $1,500 and Mr. Bartlett's odd job income in the amount of $600. Petitioners have also conceded that they received income during the taxable years 1979 and 1980 from their illegal numbers writing activity and failed to report this income in either taxable year. However, the amount of income that petitioners received each year from writing numbers is in dispute. In his statutory notice of deficiency, respondent determined that petitioners received unreported income in the amount of $24,616 from an illegal numbers game each year. Respondent's deficiency determination is presumed to be correct and petitioners have the burden of proving it wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Based on all the evidence of record, we are satisfied that petitioners have met their burden of proof. Respondent's deficiency determinations were based on an assumption that petitioners owned and operated the illegal numbers business, rather than merely being employed as numbers writers and retaining only a small portion of their receipts as compensation. *134 Respondent's determinations were also based on a projection over a full two-year period of operations. The facts are otherwise. Petitioners were merely employees working as numbers writers, and they wrote numbers for only portions of each year. In 1979, Mr. Bartlett wrote numbers only from September through the middle of October, or approximately six weeks. In 1980, he wrote numbers only from March through May, or approximately 12 weeks. During these weeks, Mr. Bartlett wrote numbers five days a week and had average daily gross receipts of $80. He retained 10 percent of these daily gross receipts as income, approximately $40 per week. Accordingly, Mr. Bartlett had unreported income from writing numbers in the amounts of $240 and $480 for the taxable years 1979 and 1980, respectively. In 1979, Mrs. Bartlett wrote numbers from the middle of October through the end of December, or approximately 12 weeks. In 1980, Mrs. Bartlett wrote numbers from January through May, or approximately 20 weeks. She earned $50 a week from writing numbers. Accordingly, Mrs. Bartlett had unreported income from writing numbers in the amounts of $600 and $1,000 for the taxable years 1979 and 1980, *135 respectively. We are satisfied that based on the evidence as a whole these amounts represent a reasonable estimate of what petitioners earned from writing numbers in each of the years in issue. On a skimpy record and without adequate factual foundation, respondent has tried to cast petitioners in the role of owners and operators of an illegal numbers business spanning a full two-year period. Respondent erects this structure primarily by surmise and speculation. Respondent argues that petitioners' testimony is contradictory and incredible and, therefore, not worthy of belief. We do not agree. While many of petitioners' responses may appear to be somewhat contradictory, we think that, in most instances, they simply did not understand the questions asked. Both petitioners have only a ninth grade education, and the questions put to them were not always clear, even to the Court. We are satisfied that when they understood what was being asked, their responses were reasonably clear and generally consistent. Respondent further argues that petitioners could not have satisfied all of their financial obligations for either year in issue based on the amount of income they reported *136 in each year and the small amount of income they concede was omitted in those years. However, petitioners received financial assistance from their eldest son and also received money from another son who had joined the Army. In addition, Mr. Bartlett constantly and regularly borrowed money from his employer. After reviewing petitioners' entire financial situation, we are satisfied the amount that petitioners now claim as their total income for each of the years in issue, plus the loans and the help from the children, was sufficient for them to scrape by on and somehow meet their financial obligations. Finally, respondent argues that Mrs. Bartlett's 1980 conviction for operating an illegal gambling enterprise clearly rebuts petitioners' claims of being merely "numbers writers." The record is clear that she pleaded guilty to this offense on the advice of her attorney, most likely as a result of plea bargaining. We simply do not find this conviction in the local city and county court to be inconsistent with petitioners' testimony. The elements of the crime of "operating an illegal gambling enterprise" are not self-evident, even to this Court. While respondent on brief carefully *137 instructed the Court as to those elements under the laws of the Commonwealth of Virginia, we rather doubt that Mrs. Bartlett ever received such instruction or could have understood it if she did. Having only a ninth grade education, Mrs. Bartlett may well have thought that being a numbers writer came within that charge. In any event, the payment of her attorney's fee and of the fine by a person or persons unknown to her is consistent with her testimony that she merely wrote numbers for a person or persons from Newport News who operated the numbers business. See n.3, supra. Furthermore, respondent's efforts to try to bridge the evidentiary gaps in his case by somehow linking Mrs. Bartlett's 1980 arrest with the 1981 arrest of both Mr. and Mrs. Bartlett must fail. See n.4, supra. We believed their testimony that they were only writing numbers in 1979 and 1980 and only wrote numbers for the limited periods we have indicated above. To summarize, we find that petitioners omitted a total of $2,940 from their 1979 joint tax return consisting of (1) $1,500 from bingo winnings, (2) $600 from Mr. Bartlett's odd job income, and (3) $840 earned from writing numbers. In 1980, petitioners *138 omitted $1,480 that they earned from writing numbers. [7]
Fraud Addition
The final issue for decision is whether petitioners are liable for the section 6653(b) fraud addition. [8] Respondent bears the burden of establishing fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The fraud envisioned by section 6653(b) is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Candela v. United States,635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Mitchell v. Commissioner,118 F.2d 308 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), followed on remand 45 B.T.A. 822 (1941); Wilson v. Commissioner,76 T.C. 623, 634 (1981), Supplemental Opinion 77 T.C. 324 (1981). Respondent must show that the taxpayer intended to evade taxes by conduct *139 calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,supra,398 F.2d at 1004; Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 112-113 (1956). Respondent must prove fraud in each of the years involved. Drieborg v. Commissioner,225 F.2d 216, 220 (6th Cir. 1955). *140 Fraud is a question of fact to be determined on the basis of the entire record. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), cert. denied 389 U.S. 912 (1967), affg. 37 T.C. 703 (1962); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Fraud can seldom be established by direct proof of the taxpayer's intention; therefore, the taxpayer's entire course of conduct must be considered, and fraudulent intent can be established by circumstantial evidence. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner,supra,67 T.C. at 200; Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,supra,53 T.C. at 105-106. Specifically, we must consider the taxpayer's conduct and other circumstances surrounding the preparation, signing, and filing of the alleged fraudulent return. Foster v. Commissioner,391 F.2d 727, 733 (4th Cir. 1968). See also Wilson v. Commissioner,supra,76 T.C. at 634. *141 Fraud is never imputed or presumed and courts should not sustain findings of fraud upon circumstances which at most create only suspicion. Olinger v. Commissioner,234 F.2d 823, 824 (5th Cir. 1956); Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950); Green v. Commissioner,66 T.C. 538, 550 (1976). Mere suspicion does not prove fraud, and the fact that we do not find the taxpayer's testimony wholly credible is not sufficient to establish fraud. Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; Shaw v. Commissioner,27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958); see also DeClercq v. Commissioner,T.C. Memo. 1982-386. Respondent contends that petitioners omitted substantial amounts of income earned from their illegal numbers writing business with the fraudulent intention to evade the payment of tax in each of the years in issue. Petitioners concede omitting income in each of the years but insist that they did not do so with the intent to evade the payment of their tax. *142 Mr. Bartlett simply forgot to report the $600 of odd job income that was not reflected on his W-2's for 1979. Mr. and Mrs. Bartlett did not know that bingo winnings were taxable income, and when they learned from their lawyer in early 1981 that it was taxable, they reported the 1979 bingo winnings on their 1980 return. While they did know that the numbers game was an illegal activity, they did not understand that their earnings from writing numbers were taxable income. Petitioners have limited education and lack knowledge of rudimentary business practices. Respondent has not proved by clear and convincing evidence that petitioners' underpayments of tax in either year were due to fraud. While the facts in this case may create a suspicion of fraud, courts should not sustain findings of fraud upon circumstances which at most create only a suspicion. Davis v. Commissioner,supra,184 F.2d at 87. [9] In any event, what might be suspicious if we were dealing with sophisticated, well educated taxpayers is less so when we consider that petitioners have only a ninth grade education and no knowledge of rudimentary business practices. Also, the record indicates that *143 petitioners cooperated with respondent's agent during audit. In fact, Mr. Bartlett voluntarily admitted to respondent's agent that he forgot to report $600 of odd job income that he earned in 1979. Respondent called only two witnesses at trial, Mr. and Mrs. Bartlett, and made no effort to develop any factual support or foundation for respondent's computation of petitioners' earnings from the numbers activity. See n.6, supra.We think respondent has simply attempted to bootstrap a finding of fraud from petitioners' admission of an understatement of income in each of the years in issue. However, fraud cannot be inferred from a mere understatement of income. Holland v. United States,348 U.S. 121, 137 (1954). Accordingly, respondent has not met his burden of showing, by clear and convincing evidence, that petitioners failed to report any amount income in either year with the intent to evade the paymen t of income tax. We conclude that fraud has not been proven and hold for petitioners on this issue. [10]
*144 To reflect the concessions and our holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. Mrs. Bartlett accumulated this $1,500 over the entire 1979 taxable year. It is not wholly clear why petitioners included bingo winnings of only $1,250 rather than $1,500. The difference may represent her expenses incurred in playing bingo. It cost $10 to play bingo and she sometimes played three times a week. Mrs. Bartlett could not recall how many weeks she played, but it is clear that she did not play every week of the year. In any event, while the $250 reduction may well represent her expenses of playing bingo, the record is unclear as to both the total amount she earned from bingo and as to any expenses she may have incurred in earning it. For that reason, we decline to allow any deduction for expenses, but will increase her 1979 income by the $1,500 figure she admits she received from bingo winnings. However, an adjustment must be made in her 1950 income to avoid taxing the same amount twice. See nn. 5, 7, infra.↩
3. Mrs. Bartlett neither hired nor paid the attorney who represented her on these criminal charges. Moreover, someone also paid the $1,000 fine for her. She did not know who hired the attorney or who paid her fine, but she suspected it was the people in Newport News, Virginia, for whom she worked. ↩
4. Respondent strenuously argues to the contrary. Respondent bases his argument primarily on the fact that in March of 1981 both Mr. and Mrs. Bartlett were arrested by the Federal authorities for operating an illegal numbers game, a charge to which they both pleaded guilty and were sentenced by the United States District Court for the Eastern District of Virginia (Newport News Division) to serve time and pay a fine of $1,500 each. We did not believe petitioners' testimony in the Tax Court proceeding that they had been back in the illegal numbers writing activity for less than a week when they were arrested in March of 1981. That would suggest a rather astonishing feat of criminal detection by the Federal authorities. Moreover, that would apparently be inconsistent with the Federal crime to which they pleaded guilty (18 U.S.C. sec. 1955↩), which requires an illegal gambling operation with gross revenue of $2,000 or more a day or a gambling business in continuous operation for a period in excess of 30 days. Nonetheless, while petitioners may have been back in the numbers business for more than 30 days at the time of their March 1981 arrest, there is no evidence in the record linking petitioners to any numbers writing activities for the rest of 1980 following Mrs. Bartlett's arrest in May of that year. We cannot bridge that evidentiary gap between the 1980 arrest and the 1981 arrest, as respondent asks us to do. Moreover, whatever illegal gambling enterprise petitioners may have embarked upon in 1981, we believed their testimony that in 1980 they merely wrote numbers for the limited periods indicated in our findings of fact.
5. This figure included Mr. Bartlett's wages of $3,075 from the Lobster House and $1,250 of Mrs. Bartlett's 1979 bingo winnings that petitioners reported as other income on line 21 of their Form 1040. See n.2, supra.↩
6. Other than the statutory notice itself, there is no evidence in the record as to the underlying factual basis for respondent's computation. On brief respondent goes outside the record to state that the computation was prepared by the Federal Bureau of Investigation and that the estimate was supported by the evidence seized in the raid on petitioners' home. We cannot consider such ex parte statements that go beyond the record of the case. Rule 143(b).↩
7. Petitioners also reported $1,250 of Mrs. Bartlett's 1979 bingo winnings in 1980 and their income should be reduced by this amount in recomputing their 1980 tax liability.↩
8. As in effect during the years in issue, section 6653(b) provided as follows: (b) Fraud. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. Section 6653(b) was amended by section 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 616-617, 1982-2 C.B. 462↩, 569, applicable to taxes the last date prescribed for payment of which is after September 3, 1982. The amendment placed the quoted language in sections 6653(b)(1) and (4), and added another addition to the tax in section 6653(b)(2).
9. See also Rinehart v. Commissioner,T.C. Memo. 1983-184; Piekos v. Commissioner,T.C. Memo. 1982-602↩.
10. Automatic adjustments are necessary with respect to petitioners' medical expense deduction, general sales tax deduction, and the computation of self-employment tax for each petitioner.↩