ROBERT N. PARKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parker v. Commissioner
Docket No. 14082-83.
United States Tax Court
T.C. Memo 1987-307; 1987 Tax Ct. Memo LEXIS 307; 53 T.C.M. (CCH) 1199; T.C.M. (RIA) 87307; June 23, 1987. Richard Meives, for the petitioner. Michael Bitner, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1977
$11,203.18
$5,601.59
1978
7,424.89
3,825.45
1979
58,985.92
29,492.96
1980
188,899.59
94,449.80
1981
80,537.12
40,268.56
*308 After concessions, the issues that we must decide are: 1. Whether petitioner is taxable on funds that he misappropriated from his employer during the years at issue. 2. Whether petitioner's failure to report the amounts he misappropriated was due to fraud. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of Champaign, Illinois, when he filed his petition herein. He filed joint Federal income tax returns with his wife, Dorothy, for each of the years at issue. [2] He reported the following amounts of adjusted gross income on those returns: Year
Income
1977
$40,661.04
1978
43,701.49
1979
51,194.86
1980
58,370.94
1981
31,949.27
*309 Petitioner is a certified public accountant. During the years at issue he was employed as a Senior Associate Vice President and Deputy Comptroller by the University of Illinois, was a paid preparer of income tax returns for others, and served as the Assistant Treasurer of the University of Illinois Foundation, a fund raising entity operated by the University of Illinois. The University of Illinois Foundation owned all the stock of U.D. Corporation. Petitioner served as Treasurer of U.D. Corporation and had signature authority over U.D. Corporation's checking account during the years at issue. [3]
Petitioner misappropriated [4] the following amounts by drawing checks on the U.D. Corporation's checking account: Amount
Year
Misappropriated
1977
$23,239.41
1978
15,332.56
1979
113,446.48
1980
308,785.62
1981
143,112.82
Petitioner made a number of the checks payable to himself and to credit card companies, but he made *310 the bulk of the checks payable to third parties. The third parties included the "Club Taray" and various women. The Club Taray was a nightclub that featured female dancers as entertainment. The women danced on stage and slowly removed their clothes. When the dancers were off-stage, customers could purchase their companionship by buying them cherries and bubble bath powder. [5] Petitioner frequented the Club Taray during the years *311 at issue, and wrote more than $90,000 of the checks to it. In 1979, petitioner began meeting one of the dancers outside of the Club Taray. During a typical evening together, petitioner and the dancer met for dinner after which they retired to petitioner's hotel room to share a bottle of wine and engage in sexual activity, either alone or accompanied by another woman. Petitioner met other women through the dancer, with whom he shared similar evenings. Petitioner wrote more than $397,000 of the checks to the women and persons they designated. Petitioner did not report any of the misappropriated funds on his Federal income tax returns even though he knew that illegally obtained income was taxable and was required to be reported on Federal income tax returns. Respondent audited petitioner's returns for the years at issue and determined by notice of deficiency dated March 10, 1983, that the amounts petitioner misappropriated constituted income taxable to him. Respondent determined additionally that petitioner was *312 entitled to increased general sales tax deductions for each of the years at issue, and that petitioner was entitled to a smaller medical expense deduction for 1981, due to the increases in his adjusted gross income. [6] Respondent determined that each resulting deficiency was subject to the addition to tax under section 6653(b). ULTIMATE FINDINGS OF FACT 1. Petitioner received the misappropriated funds as income and his failure to report them resulted in underpayments of tax for each of the years at issue. 2. Petitioner's failure to report the misappropriated funds as income and pay the tax thereon was due to fraud. OPINION Deficiency
The first issue for our decision is whether petitioner is taxable on the funds he misappropriated during the years at issue. It is important to recognize at the outset that petitioner admits that he misappropriated the funds. *313 He recognizes also the general principle that embezzled funds constitute taxable income under James v. United States,366 U.S. 213 (1961). He bases his argument that he is not taxable on the misappropriated funds on an exception to the general principle set forth in James. Under the exception, a taxpayer is not taxable on embezzled funds if his ability to dispose of the funds is restricted from the time he receives them. James v. United States,supra at 219. In an earlier opinion, we explained that: if petitioner can establish that he did not receive some or all of the embezzled funds "without restriction as to their disposition", because he acted in consort with, and under the control of, third parties, and he acted merely as conduit or agent in passing the embezzled funds to the third parties pursuant to a prearranged plan or agreement, then he may prevail, in whole or in part, in the instant case. [Parker v. Commissioner,T.C. Memo. 1985-263.]
Petitioner argues that he was mentally ill during the years at issue and that, as a result of his mental illness, he did not benefit from the misappropriated funds but instead *314 acted as a conduit through which funds were channeled to third parties. [7]
Petitioner's assertion that he was controlled and used by his female companions and the manager of the Club Taray was contradicted by their testimony at his criminal trial. At that trial, they testified that petitioner decided when to write the checks and the amounts the checks would be for, and that they had never threatened petitioner in any way to obtain the checks. There was no indication that they knew or suspected *315 that petitioner was embezzling the funds. [8]
In short, the record simply does not establish that petitioner acted merely as a conduit or agent as part of a prearranged plan or agreement to transfer any of the misappropriated funds to third parties. The record instead establishes that petitioner received the misappropriated funds "without restriction as to their disposition" when he transferred them without authority to U.D. Corporation's checking account, and that he exercised his unrestricted dominion over the funds by transferring them to third parties to obtain the companionship of women. We accordingly hold that all of the misappropriated funds constitute taxable income to petitioner. [9]
*316 Fraud
Respondent determined that petitioner is liable for the addition to tax for fraud for each of the years at issue as provided by section 6653(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). It may, however, be proven by circumstantial evidence, as direct proof of a taxpayer's intent is often not available. The taxpayer's entire course of conduct may be examined in order to determine whether the fraudulent intent is present. Stone v. Commissioner,56 T.C. 213, 224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Civil fraud need not, however, be proven by respondent "beyond a *317 reasonable doubt." Webb v. Commissioner,394 F.2d 366, 380 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Fraud is established if it is shown that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). After considering petitioner's course of conduct and the entire record, we hold that respondent has met his burden of proving fraud on the part of petitioner in each of the years at issue by clear and convincing evidence. A discussion of some of the factors on which our holding is based follows. Petitioner admits that he did not report the amounts he misappropriated in the years at issue even though he knew that illegally obtained income was taxable and that he was required to report it. The amounts he misappropriated were large in relation to the amounts he reported. Petitioner's consistent pattern of understatement of substantial amounts of income over a five year period is persuasive evidence of a fraudulent intent to evade taxes. *318 Estate of Upshaw v. Commissioner,416 F.2d 737, 741 (7th Cir. 1969), cert. denied 397 U.S. 962 (1970). See also Candela v. United States,635 F.2d 1272, 1274 (7th Cir. 1980). Petitioner additionally admits that he created fictitious vouchers to conceal his misappropriations. It has long been held that creating false documents to conceal the receipt of income is a badge of fraud. Spies v. United States,317 U.S. 492, 494 (1943). In holding that petitioner's underpayments for the years at issue resulted from fraud we are not ignoring his alleged mental illness. We recognize that serious mental illness can, in some circumstances, render a taxpayer incapable of forming the specific intent to evade tax that is an element of fraud. See, e.g., Wilson v. Commissioner,76 T.C. 623, 634 (1981); Hollman v. Commissioner,38 T.C. 251, 259-260 (1962). We have simply concluded that, as in Farber v. Commissioner,43 T.C. 407, 422 (1965), the evidence introduced that petitioner was mentally ill did not leave us with such troubling doubts as to his capacity to commit fraud that we could *319 not conclude that the evidence clearly and convincingly establishes fraud. Based on our careful and extensive review of all of the evidence in the record before us, we can only conclude that petitioner possessed the mental capacity to commit fraud during the years at issue, and that any mental illness petitioner had did not cause him to become so mentally incompetent that he was unable to form a specific intent to evade tax. We consider it significant that petitioner's medical expert was unable to firmly conclude that petitioner was incapable of forming an intent to evade taxes. [10] The expert instead emphasized that petitioner's illness was highly compartmentalized and structured so that it only interfered with some areas of his life, and that petitioner can be very rational and appropriate in other areas. Based on petitioner's work during the years at issue as a paid tax return preparer and his self-admitted recognition of an obligation to report misappropriated funds as income, it is apparent that any illness he may have had did not interfere with his ability to recognize taxable income. This is not a case, such as Hollman, in which the taxpayer was found to be too incompetent *320 to be tried criminally. Despite the fact that petitioner's expert diagnosed his illness as chronic and present in petitioner for 10 to 15 years, petitioner was tried criminally in 1982 for misappropriations he made during 1979, 1980, and 1981. In holding petitioner guilty, the jury found beyond a reasonable doubt that, when he misappropriated the funds, petitioner was able to appreciate the criminality of his conduct and conform his conduct to the requirements of the law. Although the jury's finding in the criminal trial does not establish that petitioner had the capacity to commit tax fraud, it is relevant to the issue of petitioner's overall mental capacity. See Farber v. Commissioner,supra at 422
In sum, we hold that the *321 record clearly and convincingly establishes that petitioner fraudulently failed to report the misappropriated funds as income in each of the years at issue. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Respondent determined that Dorothy is an innocent spouse under section 6013(e) with respect to the deficiencies and additions to tax at issue. Hence, respondent made no determination of deficiencies or additions to tax against her.↩
3. Although the account required two signatures on checks for amounts over $1,000, the bank never refused to honor a check on the ground that petitioner's signature was the only authorized signature to appear thereon.↩
4. The funds misappropriated were transferred by petitioner to U.D. Corporation's checking account from the University of Illinois Foundation. Petitioner disguised the impropriety of the transfers by creating fictitious vouchers showing that the funds had been expended for "patent consulting matters." Petitioner has been criminally convicted of knowingly obtaining, by deception, control over $93,002.79, $302,366.66, and $136,303.89 of the funds misappropriated in 1979, 1980, and 1981, respectively, with the intent of depriving the owners permanently of the use and benefit of the funds. People v. Parker, No. 81- CF-985 (Cir. Ct. 6th Jud. Cir., Champaign County, Ill., June 1, 1982), affd. 113 Ill. App. 3d 321, 447 N.E. 2d 457↩ (1983).
5. Cherries cost $12 each. The price of containers of bubble bath powder started at $48 and increased depending on the degree of privacy sought by the customer.↩
6. The parties have stipulated that our decision as to the correctness of respondent's determination that petitioner is taxable on the funds that he misappropriated will resolve the correctness of the adjustments to the sales tax and medical expense deductions.↩
7. Petitioner's position that he did not benefit from the misappropriated funds is summarized in the following testimony he gave at his criminal trial: Q. So, you weren't having any fun at all during this entire relationship with these four women, were you? A. There was conversation, there was dinner, but it was not a fun -- it was not a fun relationship that I was seeking on my own. Q. You didn't enjoy taking your clothes off with these women? A. Not necessarily. Q. You didn't enjoy getting into bed with them? A. I didn't really -- that was their idea, it wasn't my idea. The entire transcript of testimony at the criminal trial was stipulated into evidence herein.↩
8. The persons who received the funds from petitioner testified that petitioner represented himself as independently wealthy, and stated that U.D. Corporation was his corporation.↩
9. As the amounts misappropriated exceed 25 percent of the amounts of gross income petitioner reported on his returns for each of the years at issue, the six-year statute of limitations provided by sec. 6501(e) applies. The statute of limitations therefore does not bar the assessment of the deficiencies for 1977 and 1978. On brief, petitioner has conceded that our finding that the misappropriated funds were his income would remove the statute of limitations issue from this case.↩
10. The conclusions contained in the psychiatrist's report were hedged with qualifying statements. He concluded that, "to the best of [his] understanding," petitioner believes he was only acting as a messenger, but that the funds were never his. With regard to whether petitioner held the same beliefs during the years at issue, the psychiatrist could only conclude that he "felt" it to be more probable than not that petitioner did.↩