HUGH MEIGHAN and EMMA E. MEIGHAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meighan v. Commissioner
Docket No. 18117-85
United States Tax Court
T.C. Memo 1990-413; 1990 Tax Ct. Memo LEXIS 430; 60 T.C.M. (CCH) 401; T.C.M. (RIA) 90413; August 6, 1990, Filed *430 Decision will be entered under Rule 155. Hugh Meighan, pro se. Frances D. Sheehy, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6654 [1]
Sec. 6661
1979
$  7,376.00
-
-
1981
28,395.00
-
-
1982
29,502.00
$ 2,872.06
$ 2,652.00
1983
20,317.00
1,243.20
1,697.90
Respondent also determined the following additions to tax against Hugh Meighan individually: Year
Sec. 6653(b)
Sec. 6653(b)(1)
Sec. 6653(b)(2)
1979
$  3,688.00
-
-
1981
13,947.50
-
-
1982
$ 14,751.00
*
1983
10,158.50
*
In a second amendment to his answer, respondent modified and recomputed the amounts determined in the notice of deficiency in regard to petitioners' income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6654
Sec. 6661
1979
$  7,006.80
-
-
1981
27,293.44
-
-
1982
23,071.45
$ 2,246.00
$ 5,768.00
1983
32,176.11
1,971.00
8,044.00
*431 The modified and recomputed amounts for the section 6653(b) additions to tax against Hugh Meighan individually were as follows: Year
Sec. 6653(b)
Sec. 6653(b)(1)
Sec. 6653(b)(2)
1979
$  3,503.00
-
-
1981
13,646.72
-
-
1982
11,535.72
*
1983
16,088.06
*
After concessions, the issues for decision are: (1) whether petitioners failed to report income during the years in issue as determined by respondent; (2) whether they are entitled to deduct claimed Schedule C expenses in 1979 and 1981; (3) whether they are entitled to deduct claimed employee business expenses in 1979; (4) whether they are liable for self-employment tax in 1981, 1982, and 1983; (5) whether petitioner Hugh Meighan is liable for additions to tax for fraud pursuant to section 6653(b); (6) whether assessments of deficiencies for 1979 and 1981 are time-barred by the statute of limitations; (7) whether petitioners are liable for additions to tax for failure to pay estimated income taxes in 1982 and 1983 pursuant to section 6654; and (8) whether they are liable for additions to tax for substantial understatements of income tax in *432 1982 and 1983 pursuant to section 6661 and, if so, the applicable rate to be used in computing the addition to tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Miami, Florida, at the time their petition was filed. From 1979 through 1983 Hugh Meighan (petitioner) was a real estate broker, insurance agent, financial consultant, and tax return preparer in the New York City area. He completed several years of college and a comprehensive course in taxation. He is "well versed" in tax law. At various times between 1979 and 1983, petitioner owned and operated Belmopan Insurance Brokerage (Belmopan) and H. Meighan Brokerage (H. Meighan), both of which were insurance agencies located at different offices in Brooklyn, New York. Petitioner's companies represented several insurance companies, including State Farm Insurance Companies (State Farm), Prudential Insurance Company of America (Prudential), Allstate Insurance Company (Allstate), Liberty Mutual, and Metropolitan Life Insurance Company (Metropolitan). Petitioner prepared Federal, New York *433 City and New York state income tax returns for numerous clients. His fee was a cash, up front payment of between $ 35 and $ 50 plus a portion of the refund obtained for his client (normally the entire amount of the state tax refund plus a portion of the Federal tax refund). As a condition to having petitioner prepare his return, the client was required to execute a power of attorney in favor of petitioner and to have his Federal and state refund checks sent directly to one of petitioner's several Brooklyn office addresses or to the address of Roberto Santos (Santos) who worked with petitioner. Petitioner, or Santos, endorsed and cashed the clients' tax refund checks. The payee's signature on many of the checks were forged. Petitioner kept the entire amount of the state refund, as well as a portion of the Federal refund. Petitioner prepared fraudulent tax returns for his clients which enabled them to obtain substantial refunds. On these returns, inflated and fabricated deductions for medical expenses, contributions, theft losses, and miscellaneous expenses were claimed. In 1983, the IRS conducted an investigation involving petitioner's preparation of fraudulent tax returns. IRS *434 undercover agents, posing as prospective clients, went to petitioner's office on March 30, 1983. The conversation between petitioner and the undercover agents was recorded; petitioner was unaware of such. In order to obtain refunds greater than that to which they were entitled, petitioner told the agents to claim their mothers as dependents, even though they did not provide them with support. He also encouraged them to claim friends, cousins, and brothers or sisters as dependents and to claim a theft loss deduction for a fictitious burglary. Petitioner told them that the "name of this game [is] you have to come up with things to beat the man, you know." Petitioner prepared separate tax returns for each of the undercover agents. With respect to the return of one of the agents, based on the information given to petitioner, such agent would have been entitled to a Federal income tax refund of $ 88; by claiming fabricated deductions, petitioner falsely computed the agent's taxes so that she would receive a refund in excess of $ 2,000. For preparing the return, petitioner received a $ 50 cash fee plus the amount by which the Federal tax refund exceeded $ 2,000. Petitioner provided *435 the agent with a copy of her return which differed from the return which petitioner filed on her behalf with the IRS. The agent's copy showed only one dependent, whereas the return filed with the IRS showed five, including petitioner's daughter, two of his clients, and a cleaning man. Petitioners filed their 1979 joint Federal income tax return on May 5, 1980. The return reflected wages of $ 16,838, Schedule C business income from H. Meighan of $ 1,580 and employee business expenses of $ 13,373. (The Schedule C income was determined as follows: gross receipts of $ 5,125, less returns and allowances of $ 975 and deductions of $ 2,570. Petitioner's employee business expenses related to his occupation as an insurance salesman for Prudential.) Because petitioners reported an adjusted gross income of $ 5,045, no tax liability was shown to be due. In addition to the $ 16,838 in wages petitioner received from Prudential, he received $ 484 in commissions from State Farm and $ 516.80 from Allstate. For preparing client tax returns in 1979, petitioner received fees of at least $ 13,086 as his "percentage" of his clients' New York state tax refund, an undetermined amount as his share of *436 his clients' Federal tax refunds, plus an undetermined amount of up front cash fees. In the notice of deficiency, respondent determined that in 1979 petitioners received additional income of $ 13,086 from New York state income tax refunds; disallowed their claimed Schedule C expenses and returns and allowances; and disallowed petitioner's claimed employee business expenses. In the second amendment to his answer, respondent increased the deficiency by $ 1,000.80, the amount of unreported commissions. Petitioners filed a joint Federal income tax return for 1981 on which they reported commissions of $ 21,300 from Metropolitan and a Schedule C business loss of $ 15,985. The Schedule C business loss related to Belmopan and was comprised of gross receipts of $ 14,500 and deductions totaling $ 30,485, including a theft loss in the amount of $ 7,800. (Petitioner claims that on approximately October 31, 1981, the office of Belmopan was broken into and a camera, records, typewriters and other articles were taken. He further claims he reported the incident to the police, but nothing was recovered. Petitioner failed to produce a copy of the police report.) In 1981, petitioner received $ 261 *437 in commissions from Liberty Mutual, $ 432.90 from Allstate and $ 175.80 from State Farm, all of which he failed to report. He also received in 1981 at least $ 40,608.16 as his "percentage" of his clients' New York state tax refund, an undetermined amount of up front cash fees, plus an undetermined amount as his share of his clients' Federal tax refunds. In relevant part, respondent determined in his notice of deficiency that petitioners received additional gross income from New York state income tax refunds in 1981 of $ 40,606 and disallowed their Schedule C expenses in their entirety. Respondent further determined that petitioners are liable for self-employment tax of $ 781 in 1981. In the second amendment to his answer, respondent increased the deficiency by $ 871.86 as a result of the unreported commissions and understatement of New York state income tax refund checks received by petitioner. Petitioners failed to file Federal income tax returns for 1982 and 1983. In 1982, petitioner received commissions of $ 2,061.74 from Prudential, $ 91.40 from Liberty Mutual, $ 401.80 from Allstate, $ 669.60 from State Farm, and wages of $ 505.25 from Metropolitan. Petitioners also received *438 interest income of $ 232.43. From petitioner's tax return preparation business, he received in 1982 at least $ 64,904 as his "percentage" of his clients' New York state tax refunds, an undetermined amount of up front cash fees, plus an undetermined amount as his share of his clients' Federal tax refunds. In his notice of deficiency, respondent determined that petitioners received gross income in 1982 of $ 79,989.22, comprised of New York state income tax refunds of $ 76,027, insurance commissions of $ 3,729.79 and interest income of $ 232.43, and that petitioners are liable for self-employment tax in the amount of $ 2,982. To correct the overstatement of New York state income tax refunds originally determined in the notice of deficiency, in his second amended answer, respondent decreased such amount by $ 11,123. In 1983, petitioner received $ 165.10 in commissions from Liberty Mutual, $ 976.60 from Allstate, and $ 156.90 from State Farm. Petitioners also received interest income of $ 7.22. For preparing client tax returns, petitioner received in 1983 at least $ 11,560 as reflected in his journal, as well as an undetermined amount of Federal income tax refunds. In addition, he *439 received and retained his clients' New York state tax refund checks in the amount of $ 75,984.41. In his notice of deficiency, respondent determined that petitioners received gross income in 1983 of $ 64,194.23, comprised of New York state income tax refunds of $ 62,888.41, insurance commissions of $ 1,298.60 and interest income of $ 7.22. Respondent also determined that petitioners are liable for self-employment tax in the amount of $ 3,338 for 1983. To reflect the cash fees collected by petitioner in 1983, as well as the correct amount of New York state refund checks received by him, in his second amended answer, respondent increased the deficiency amount by $ 24,656. On June 24, 1983, petitioner pled guilty to three counts of willfully aiding and assisting in the preparation of fraudulent Federal income tax returns pursuant to section 7206(2) and one count of willfully conspiring to defraud the government with respect to the preparation of fraudulent Federal income tax returns pursuant to 18 U.S.C. 371 (1988). He was sentenced to three years in prison. ULTIMATE FINDINGS OF FACTS 1. Petitioner received but willfully and fraudulently (with the intent to evade and defeat the payment *440 of his taxes) failed to report the following amounts of income: For
Amount of Income Received
Year
but Unreported
1979
$ 14,086.80
1981
41,477,86
1982
68,866.22
1983
88,850.23
A part of each underpayment in income tax for each of the years in issue was due to fraud with intent to evade taxes. 2. Petitioners are liable for additions to tax for failure to pay estimated income taxes for 1982 and 1983. 3. Petitioners are liable for additions to tax for substantial understatements of income tax for 1982 and 1983. OPINION Respondent's determinations in the notice of deficiency are presumptively correct, and petitioners bear the burden of proving otherwise by a preponderance of the evidence. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). With respect to the increases set forth in amendments to his answer, respondent bears the burden of proof. Rule 142(a). Respondent also has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a) and Rule 142(b). 1. Unreported Income
The first issue is whether petitioners received, but failed to report, income from wages, commissions, interest and fees from the preparation of returns as set forth above. Petitioners do not dispute *441 that they received the interest income herein set forth. Nor do they dispute that they received income from wages and commissions from the various insurance companies. Petitioner claims, however, that a portion of the commissions were only advances and that he was required to return some or all of the commissions to the company if the insured defaulted or canceled his or her insurance. We are not required to accept petitioner's self-serving testimony if we regard it as improbable, unreasonable or questionable. Archer v. Commissioner, 227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. See also Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Petitioner was not a credible witness; we do not accept his claim that a portion of the insurance commissions constituted advances. Consequently, we sustain respondent's allegations, as set forth in his second amended answer, with respect to the wages, commissions and interest income received by petitioner for each of the years in issue. With respect to the New York state tax refunds, petitioner claims that Santos and another individual cashed many of the checks and *442 kept the money. None of the checks that were sent to Santos' address were included in the transcripts from the State of New York from which respondent determined the deficiencies. Again, we do not accept petitioner's claim. Respondent determined the amount of fees received by petitioner in 1983 as his "percentage" of his clients' New York state tax refunds from a log which petitioner maintained. We find this to be persuasive evidence that he, in fact, received such fees. We therefore sustain respondent's determination as to the amount of income petitioner received from New York State refund checks. Although petitioners reported Schedule C income in 1979 and 1981 from H. Meighan and Belmopan, they presented no evidence which would indicate that any of the cash fees or tax refunds discussed above were included in their income. Consequently, we conclude that such amounts are not duplicative of any amounts reported by petitioners on Schedule C of their 1979 and 1981 returns. See Wichita Terminal Elevator Co. v. Commissioner, 162 F.2d 513 (10th Cir. 1947). Respondent's determinations with respect to petitioners' unreported income for each of the years in issue is sustained. 2. and *443 3. Schedule C Expenses and Employee Business Expenses
Next, we consider whether petitioners are entitled to deduct Schedule C expenses in 1979 and 1981 and employee business expenses in 1979. Deductions are a matter of legislative grace, and petitioners bear the burden of proving they are entitled to their claimed deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rule 142(a). Petitioners failed to offer checks, receipts, books, records, or other documents to substantiate their claimed expenses. Petitioner contends that his records were seized by respondent and have not been returned. But he did not present any persuasive evidence supporting any attempt to have the records returned or of replacing or reconstructing such records. His inability to present his records does not relieve him of his burden of proof. Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Figueiredo v. Commissioner, 54 T.C. 1508 (1970), affd. by unpublished order (9th Cir. 1973). Moreover, with the exception of the claimed theft loss on the 1981 return, petitioner failed to provide any evidence as to the accuracy or business purpose of any of the *444 claimed deductions for 1979 and 1981. His testimony with regard to the alleged theft loss closely resembles the advice he gave his clients in the staging of a fictitious robbery for the purpose of claiming tax deductions. Although this Court may estimate allowable expenditures if the taxpayer can establish that some expenditures have been made, Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), here petitioner failed to produce even a scintilla of reliable evidence with respect to his claimed deductions. In these circumstances, it is impossible to determine the correct amounts, if any, of the claimed deductions. Petitioners have completely failed to meet their burden of proof. Respondent's disallowance of the claimed deductions is therefore sustained. 4. Self-Employment Tax
Next, we must decide whether petitioners are liable for self-employment taxes for 1981, 1982 and 1983. Section 1401 imposes a tax on the self-employment income of every individual. Self-employment income is defined as "net earnings from self-employment," with certain exceptions not relevant here. Sec. 1402(b). The term "net earnings from self-employment" is defined as gross income, less certain *445 deductions derived by an individual from any "trade or business carried on" by such individual. Sec. 1402(a). Respondent determined that petitioners are liable for self-employment taxes with respect to petitioner's various business endeavors. Petitioners presented no evidence to show that the tax is not applicable or that respondent's computation is incorrect. Accordingly, we hold that petitioners are liable for the self-employment taxes as determined by respondent. 5. Fraud -- Section 6653(b)
We must next decide whether any part of any underpayments of tax for the years in issue was due to petitioner's fraud. As previously indicated, the burden of proving fraud by clear and convincing evidence is on respondent. Sec. 7454(a); Stone v. Commissioner, 56 T.C. 213, 220 (1971); Rule 142(b). This burden may be met by showing that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there is an underpayment of tax. Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). However, respondent *446 cannot satisfy his burden of proving fraudulent intent by relying solely on the failure of the taxpayer to discharge his burden of proving error in the determination of the deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). It is unnecessary for respondent to prove the exact amount of income that was fraudulently unreported because section 6653(b), as applicable to the years in issue, applies to the entire deficiency if any part of the underpayment for each year is attributable to fraud. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982); Otsuki v. Commissioner, supra at 105. The existence of fraud is a question of fact to be resolved upon a consideration of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), *447 affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, supra at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States, 317 U.S. 492 (1943); Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, supra at 223-224. A number of cases have held that consistent and substantial understatements of large amounts of taxable income over a period of years are strong evidence of fraud. Merritt v. Commissioner, 301 F.2d 484 (5th Cir. 1962), affg. a Memorandum Opinion of this Court; Smith v. Commissioner, 32 T.C. 985, 987 (1959). However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, supra at 487. Petitioner substantially underreported his income in 1979 and 1981, and he failed to report any income in 1982 and 1983 (because he did not file returns for those years), even though he received large amounts of income. Petitioner was a tax return preparer who considers himself "well versed" in the Federal tax law. He was clearly aware that the amounts he received during the years in issue constituted taxable income, and he knew of his duty to report such income. Moreover, *448 petitioner encouraged and assisted his numerous clients in claiming false and inflated deductions. He detailed the steps to be taken by clients in staging fictitious robberies in order to claim theft loss deductions on their returns. It strains our credulity to believe that petitioner's total and deliberate disregard for accuracy in the preparation of his clients' income tax returns would not also carry over into the preparation of his own tax returns. Further, petitioner claimed a fictitious theft loss deduction on his own return, which was plainly aimed at carrying out his intent to evade taxes. The record is replete with examples of his attempt to conceal, mislead and otherwise prevent the collection of taxes. Accordingly, we hold that respondent has met his burden of proving fraud by clear and convincing evidence, and that petitioner is individually liable for the section 6653(b) additions to tax. 6. Statute of Limitations
Having found that petitioner filed false and fraudulent Federal income tax returns for 1979 and 1981, it follows that the taxes for those years may be assessed at any time. Sec. 6501(c)(1). 7. Section 6654 Additions to Tax
Respondent determined additions *449 to tax under section 6654 for underpayments of estimated tax. Where prepayments of tax, either through withholding or by making estimated tax payments quarterly during the course of the year, do not equal the percentage of total liability required under the statute, imposition of the addition is mandatory, unless the taxpayer shows that one of several statutory exceptions applies. Sec. 6654; Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). Since petitioners did not introduce any evidence on this issue, we sustain respondent's determination and hold that petitioners are liable for the additions to tax under section 6654(a) for 1982 and 1983. Reaver v. Commissioner, 42 T.C. 72, 83 (1964). 8. Section 6661 Additions to Tax
Respondent also determined that, with respect to 1982 and 1983, petitioners' understatements of income tax were substantial and that they were liable for additions to tax under section 6661(a). Petitioners bear the burden of proof concerning their liability for the section 6661(a) additions to tax. Rule 142(a). Such addition is applicable where the amount of the understatement exceeds the greater *450 of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1)(A)(i) or (ii). Unless such understatements can be reduced by application of section 6661(b)(2)(B), petitioners' understatements of their Federal income tax constitute substantial understatements. Section 6661(b)(2)(B) provides for the reduction of an understatement "by that portion of the understatement which is attributable to": (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.
Here, petitioners neither had substantial authority for their failure to report the large amounts of income that they received, nor did they adequately disclose such failure on their return or a statement attached to their return. In fact, no returns were filed for 1982 and 1983. Therefore, respondent's determination is sustained. In the notice of deficiency, respondent determined a rate of 10 percent of the underpayment for each year. The correct rate of the addition is 25 percent, which *451 respondent asserted for the first time in his brief. Pallottini v. Commissioner, 90 T.C. 498 (1988).Respondent never amended his pleadings to allege the correct rate, nor did he present his claim for the increased amount at the trial of this case. We will not consider an issue that has not been properly pleaded and, absent a clear and timely claim by respondent for an increased deficiency, we will not sustain an amount greater than that determined in the notice of deficiency. Pallottini v. Commissioner, supra at 500; Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67 (2d Cir. 1984).Accordingly, the applicable rate for the section 6661 additions to tax in this case is 10 percent. To reflect the foregoing and concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the entire amount of the underpayment of tax attributable to fraud for the year.↩
*. 50 percent of the interest due on the entire amount of the underpayment to tax attributable to fraud for the year.↩