GONG YOK TSUN CHIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chin v. Commissioner
Docket No. 1518-91
United States Tax Court
T.C. Memo 1994-54; 1994 Tax Ct. Memo LEXIS 55; 67 T.C.M. (CCH) 2140; February 10, 1994, Filed *55 Decision will be entered under Rule 155. For petitioner: Raymond R. Kimpel. For respondent: Richard A. Stone. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to tax Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661(a)
1983
$ 68,153
$ 34,077
[1]
$ 17,038
1984
39,375
19,688
[2]
9,844
1985
61,411
37,001
$ 381
15,353
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The parties have agreed that petitioner omitted the following amounts of interest income from her Federal income tax returns for the 3 years in issue: 1983
1984
1985
$ 19,132
$ 23,780
$ 26,287
Respondent has conceded that the deficiencies, as determined by the bank deposits method, should be reduced to reflect cash transfers that respondent had included in income. The *56 remaining issues are: (1) Whether respondent is barred by the statute of limitations from assessing the deficiencies and additions for 1983, 1984, and 1985; (2) if respondent is not so barred, whether certain cash deposits and expenditures were taxable income for 1983, 1984, and 1985; and (3) whether petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) [1] and for substantial understatement under section 6661 for the taxable years in issue. Although we find that respondent is barred from assessing any deficiency or addition to tax for 1984, we find that she is not so barred for 1983 and 1985, and that all cash deposits and expenditures in issue were taxable income for 1983 and 1985. We also find that, although petitioner is not liable for any section 6653(b) additions, she is liable for section 6661 additions for 1983 and 1985. FINDINGS OF *57 FACT The parties have stipulated some of the facts, and the Stipulation of Facts and attached exhibits are incorporated in this opinion. In 1949, petitioner emigrated to the United States. Since the late 1960s, she has owned and operated the Hong Kong Restaurant (the restaurant) in Champaign, Illinois, as a sole proprietorship, and she resided in Champaign, Illinois, when she filed her petition. In addition to the restaurant, petitioner has acquired U.S. real property, listed securities, and bank accounts. All the property, securities, and bank accounts were held in either petitioner's name or the restaurant's name, and petitioner provided her Social Security number where appropriate. Petitioner speaks Chinese fluently. She speaks some English and understands most spoken English. Petitioner does not read or write English as well as she speaks it, although she appears to have been able to recognize official documents and important mail. At trial, petitioner used an interpreter to facilitate her testimony. [2]
*58 Dean Lafferty (Mr. Lafferty) has been petitioner's accountant and tax preparer for over 25 years, and petitioner trusted him to "do everything right." Each month, petitioner gave Mr. Lafferty the restaurant's checkbook, canceled checks, cash payout receipts, and sales book. Although petitioner would give Mr. Lafferty any receipt he asked for, she generally only gave him the receipts for cash payouts. All the restaurant's records were normally clear and straightforward, and Mr. Lafferty used them to maintain the restaurant's books and to prepare monthly statements of income and expenses. Mr. Lafferty also provided similar accounting services for restaurants owned by petitioner's sons. In February or March of each year, petitioner brought Mr. Lafferty a sack of source documents, most of them still in unopened envelopes. Mr. Lafferty used these documents to prepare petitioner's income tax returns. Except for Forms 1099, the sacks did not include any records of petitioner's personal bank accounts, and petitioner did not keep any independent records of her interest or dividend income. Mr. Lafferty calculated petitioner's interest and dividend income, using the Forms 1099 she gave *59 him. For the years in issue, petitioner did not give Mr. Lafferty all the Forms 1099 that she received from the Champaign National Bank (the bank), although she did give him all the Forms 1099 she was aware of. As a result, Mr. Lafferty did not calculate the correct amount of petitioner's interest income, and her interest income was underreported in the agreed amounts for the years in issue. Mr. Lafferty, while preparing petitioner's 1983 income tax return, noticed that her interest income had decreased significantly from 1982 to 1983. Mr. Lafferty asked petitioner why her interest income had decreased so much, and she told him she had lent money to her sons for use in their restaurants. For all 3 years in issue, petitioner filed her Federal income tax returns before their due dates, without extensions, reporting income, adjustments, and gross receipts as follows: 1983
1984
1985
Interest
$  10,728
$   9,108
$  12,038
Dividends
6,520
3,616
4,595
Refunds of State and local taxes
584
332
382
Gross business receipts
307,779
332,498
333,672
Net business profits
32,399
19,635
42,982
Capital gains
1,240
12,789
9,002
IRA deductions
2,000
2,000
2,000
*60 On October 29, 1986, respondent mailed petitioner a letter (the matching letter), which stated that interest income reported on petitioner's 1984 income tax return did not agree with amounts reported on Forms 1099-INT filed by petitioner's bank. The matching letter asked petitioner to provide an explanation for the discrepancy within 30 days. Petitioner forwarded the matching letter to Mr. Lafferty, and he contacted the bank. The bank verified the information on the matching letter for 1984 and provided Mr. Lafferty with the amount of petitioner's interest income for 1985. For 1984, Mr. Lafferty wrote back to respondent explaining, "T/P did not receive 1099 * * *. Calculate tax and let me know how much I [sic] owe." In addition, Mr. Lafferty prepared an amended Federal income tax return for 1985 (increasing interest income by $ 26,287) and amended State income tax returns for 1984 and 1985. Within 1 month of receiving the matching letter, petitioner responded to the matching letter and filed the amended returns. Petitioner took no further action regarding the unreported interest income for 1984. The matching letter also precipitated respondent's audit of petitioner's income *61 tax returns for the years in issue. During the audit, petitioner told respondent's agent that most of the interest income omitted from her 1984 return ($ 21,552) was omitted because she did not open the envelope containing the Form 1099 when she received it. Petitioner told the agent that the other unreported interest income for 1984 was omitted because she did not receive the Forms 1099. Petitioner showed the agent the 1984 Form 1099 that she had received. At the same meeting, petitioner told the agent that the interest income for 1985 was omitted from her return because she did not receive the Forms 1099. In later communications, respondent's agent asked Mr. Lafferty why the interest income was omitted from petitioner's tax returns. Mr. Lafferty answered that petitioner did not know why, but that it may have been because the envelopes containing the Forms 1099 had not been opened. At a meeting with a member of respondent's Office of Chief Counsel, petitioner said that she did not receive a Form 1099 for the interest omitted from her 1983 income tax return. Respondent determined that petitioner omitted the interest income from her returns with the intent to evade tax; respondent *62 determined the section 6653(b)(2) addition to tax solely on the part of the understatement attributable to omitted interest income. On August 29, 1988, during a criminal investigation of petitioner, respondent served a summons on Mr. Lafferty. The summons required Mr. Lafferty to provide respondent's agent with all books and records of petitioner and the restaurant for the years 1983, 1984, and 1985. On September 16, 1988, petitioner, through her attorney, filed a petition in the U.S. District Court for the Central District of Illinois to quash the summons. The District Court denied the petition on February 2, 1989, and petitioner did not file an appeal of the court's order during the 60-day appeal period. Instead, on February 9, 1989, Mr. Lafferty turned over to respondent's agent the summoned books and records. The criminal investigation did not result in any charges being filed against petitioner, but on October 26, 1990, respondent mailed petitioner a statutory notice of deficiency for the years in issue. Respondent used the bank deposits method to reconstruct petitioner's income. Respondent sought to identify nontaxable sources for cash deposits and expenditures by searching *63 petitioner's personal and business bank records, brokerage statements, accounting records, and other sources of cash. Respondent also spoke to Mr. Lafferty in an effort to identify nontaxable sources. Mr. Lafferty prepared and discussed with respondent's agents his own analysis of petitioner's deposits, indicating deposits whose source he could not identify. As a result of the examination, respondent determined that the following cash deposits and expenditures (adjusted for concessions), which were not included in gross income in petitioner's 1983 return, were income to petitioner during 1983: Deposits to personal accounts:
4/11/83
$ 5,000
4/20/83
7,000
5/9/83
9,900
6/6/83
6,000
7/11/83
6,500
7/18/83
2,000
9/2/83
500
9/6/83
4,000
9/6/83
6,500
9/9/83
1,500
10/31/83
1,500
11/7/83
5,000
(deposit to IRA, date unknown)
2,000
$ 57,400
Deposits to business account:
12/5/83
6,500
Bank and cashier's checks used as payments
for the purchase of real property:
8/3/83
9,500
8/3/83
9,500
8/4/83
8,000
12/20/83
9,500
12/20/83
9,500
46,000
Personal cash expenditures
during 1983
1,785
Total
111,685
Respondent determined that the following cash deposits *64 and expenditures (adjusted for concessions), which were not included in gross income in petitioner's 1984 return, were income to petitioner during 1984: Deposits to personal accounts:
2/21/84
$ 2,000
4/23/84
4,000
5/21/84
7,000
9/4/84
2,000
9/11/84
2,500
10/23/84
3,500
11/5/84
7,900
12/19/84
7,000
$ 35,900
Loan to Eddie Chin pursuant to
"Assignment and Security Agreement"
dated 12/23/83 used by Eddie Chin
to purchase a cashier's check:
1/26/84
9,000
Personal cash expenditures
during 1984:
2,085
Capital contribution to cash on hand
during 1984:
499
Total
47,484
Respondent determined that the following cash deposits, which were not included in gross income in petitioner's 1985 return, were income to petitioner during 1985: Deposits to personal accounts:
1/7/85
$ 9,700
2/4/85
9,000
2/11/85
9,500
2/19/85
2,500
3/11/85
5,000
4/12/85
6,500
4/29/85
8,800
5/10/85
3,500
6/12/85
3,500
7/2/85
20,000
8/6/85
9,800
8/15/85
8,000
10/9/85
3,500
10/15/85
9,900
11/7/85
5,500
(deposit to IRA, date unknown)
2,000
$ 116,700
Deposit to business account:
6,000
Total
122,700
We will refer to the cash deposits and cash expenditures *65 listed above as "the cash deposits" or "cash deposits in issue". We have found, by a preponderance of the evidence, that the cash deposits were income to petitioner and were not reported on her income tax returns for the years in issue. OPINION Before we discuss our findings in detail, we will try to clarify the relationships among respondent's determinations, the issues raised thereby, and our overall findings. For all 3 years in issue, respondent determined that petitioner omitted two types of income from her returns, interest income and the cash deposits. Respondent determined that petitioner's omissions of both types of income were substantial omissions from gross income for 1983 and 1985, but that only petitioner's omissions of interest income were fraudulent. Having determined underpayments of tax based on understatements of both interest income and cash deposits, respondent alleged, as evidence of petitioner's fraudulent intent, that petitioner gave respondent's agents contradictory explanations of the sources of both types of income. However, respondent did not determine that the cash deposits were fraudulently omitted from petitioner's returns. [3]
*66 We have concluded that petitioner's omissions of the cash deposits and her explanations of the sources of those deposits do not support a finding that petitioner fraudulently omitted the interest income. First, evidence connecting the cash deposits to a source of income (see infra pp. 23-30), although sufficient to support a finding of income by a preponderance of the evidence, is insufficient to support a finding of income by clear and convincing evidence. See Franklin v. Commissioner, T.C. Memo. 1993-184. Second, we do not think that indicia of petitioner's intent (see infra pp. 15-20) with respect to the cash deposits, without more, throw any light on petitioner's intent with respect to the omitted interest income. [4] In considering whether petitioner filed false and fraudulent returns with the intent to evade tax, we have therefore given no weight to petitioner's omission of the cash deposits. See Candela v. United States, 635 F.2d 1272, 1274 (7th Cir. 1980). *67 Issue 1(a) Statute of Limitations -- Generally
Generally, the Commissioner must assess tax within 3 years after the later of the date the return was due, without extensions, or the date the return was actually filed. Sec. 6501. However, as previously indicated, two exceptions to the general period for assessment are relevant here. First, if a taxpayer files a false or fraudulent return with the intent to evade tax, the tax may be assessed, or court proceeding commenced, at any time. Sec. 6501(c). Second, if the taxpayer omits more than 25 percent of gross income, the tax may be assessed or court proceeding commenced within 6 years after the later of the date the return was due, without extensions, or the date the return was filed. Sec. 6501(b), (e). The income tax returns for the years in issue were all signed by their due dates, without extensions, and no evidence was presented that the returns were not timely filed. We have therefore found that petitioner's income tax returns were timely filed and that respondent generally would have 3 years from the respective due dates of the returns to assess the taxes. Respondent mailed the statutory notice of deficiency on *68 October 26, 1990, well after expiration of the normal periods for assessment provided in section 6501(a). If petitioner proves that the 3-year period of limitations has expired, respondent has the burden of proving that one of the exceptions to the statute of limitations applies. Reis v. Commissioner, 1 T.C. 9, 12 (1942), affd. 142 F.2d 900 (6th Cir. 1944). Respondent must prove fraud by clear and convincing evidence, sec. 7454; Rule 142(b), but she need only prove a 25-percent omission from income by a preponderance of the evidence. Armes v. Commissioner, 448 F.2d 972, 974-975 (5th Cir. 1971), affg. in part, revg. in part, and remanding in part T.C. Memo. 1969-181; Cruz v. Commissioner, T.C. Memo. 1990-594; Sacco v. Commissioner, T.C. Memo. 1988-532. Issue 1(b) Statute of Limitations -- Fraud
When the Commissioner alleges that a taxpayer filed a false and fraudulent return with the intent to evade tax, the Commissioner must prove that the taxpayer (1) underpaid income tax and (2) filed the tax *69 return with the specific intent to evade a tax believed to be owed. Sec. 6501(c); Bender v. Commissioner, 256 F.2d 771, 774 (7th Cir. 1958), affg. T.C. Memo. 1957-121. We do not impute or presume fraud, and we do not find fraud on the basis of circumstances that do no more than create a suspicion of fraud. Green v. Commissioner, 66 T.C. 538, 550 (1976). Although the Commissioner is not required to establish fraud beyond a reasonable doubt, the "clear and convincing" standard requires that she establish fraud by more than a preponderance of the evidence. Kellett v. Commissioner, 5 T.C. 608, 616 (1945). The parties have stipulated that, for each of the years in issue, petitioner did not report all her interest income. Because petitioner did not report all her interest income, she underpaid her tax, so the first requirement for a finding of fraud is met. We therefore turn to the second requirement, petitioner's intent. Fraud is "'actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.'" Estate of Temple v. Commissioner, 67 T.C. 143, 159 (1976) *70 (quoting Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941)). A taxpayer's negligence, whether slight or gross, is not enough to prove a willful attempt to evade tax, Kellett v. Commissioner, supra at 618, and understatement of income is not sufficient to establish fraud, Estate of Upshaw v. Commissioner, 416 F.2d 737, 741 (7th Cir. 1969), affg. Upshaw v. Commissioner, T.C. Memo. 1968-123. However, if a taxpayer consistently underreports income and other circumstances show an intent to conceal the income, an inference of fraud may be justified. Holland v. United States, 348 U.S. 121, 137 (1954). Fraudulent intent is gleaned by surveying the course of the taxpayer's conduct. Stone v. Commissioner, 56 T.C. 213, 224 (1971). However, because fraud, if committed, is committed and completed when a return is prepared and filed, a taxpayer's repentance does not purge the prior fraud. Badaracco v. Commissioner, 464 U.S. 386, 394 (1984); Plunkett v. Commissioner, 465 F.2d 299 (7th Cir. 1972), *71 affg. T.C. Memo. 1970-274. Therefore, petitioner's amended 1985 return does not cure any fraudulent intent, and we have considered it only as indirect evidence of her intent at the time she filed the original 1985 tax return. Because direct evidence of fraud is rarely available, the Commissioner may use circumstantial evidence to prove the taxpayer's fraudulent intent. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Courts have relied on various objective indicia to support a determination of fraud. These "badges of fraud" include: (1) Substantial understatement of income; (2) inadequate books and records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) significant cash transactions; (10) participation in illegal activities; and (11) concealment of an illegal activity. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). These indicia are not direct evidence of fraud, and we consider them in *72 the context of the surrounding circumstances. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992); Comparato v. Commissioner, T.C. Memo. 1993-52. Petitioner admitted that she underreported her interest income for all 3 years at issue. The omitted interest income was 38.7 percent of the adjusted gross income she reported for 1983, 54.7 percent for 1984, and 39.2 percent for 1985. [5] Although these omissions are substantial enough to indicate fraudulent intent, the omissions alone are not so substantial as to unequivocally indicate fraudulent intent, and we consider them in the context of the entire record. Candela v. United States, 635 F.2d at 1274; Recklitis v. Commissioner, supra at 909; Wheadon v. Commissioner, T.C. Memo. 1992-633; cf. Kramer v. Commissioner, 389 F.2d 236 (7th Cir. 1968), affg. T.C. Memo. 1966-234. *73 Petitioner kept books and records and filed tax returns for all 3 years in issue. It is clear that the records petitioner turned over to Mr. Lafferty did not disclose substantial amounts of her interest income. However, respondent has not alleged that petitioner kept a double set of books or that any specific entries in petitioner's books and records were false or altered. We find that petitioner's failure to provide Mr. Lafferty with complete records of her interest income is as consistent with negligence as with fraud. On the entire record, petitioner's books and records are not inadequate as a result of fraud. Respondent contends that petitioner's "numerous contradictory explanations" of why interest income was omitted from her returns evidence petitioner's fraudulent intent. Although petitioner's explanations have not been identical, they are not so inconsistent or irreconcilable as to evince fraudulent intent. From the start of the audit, petitioner consistently said that she had not given Mr. Lafferty the Forms 1099 that reported the omitted interest income. When she explained why, she gave two reasons. First, she said that she had not opened the envelopes. Second, *74 she said that she had not received the Forms 1099 from the bank. However, the two explanations are not mutually exclusive, given that there are 3 years and several accounts in issue. We are not satisfied that petitioner's explanations were false statements intended to be evasive. Instead, they appear to have been expressions of uncertainty suggesting possible reasons for the omissions. We have not been persuaded that petitioner's statements to Mr. Lafferty, to respondent's agents, or to this Court were made in aid of an effort to evade tax. Petitioner's statements were reconcilable. Petitioner did not conceal assets. All petitioner's bank accounts were opened in her name or the restaurant's name, and petitioner provided the bank with her Social Security number. All petitioner's real estate was owned in her name. Petitioner did not use secret accounts or fictitious nominees to hide her sources of income. Petitioner turned over to Mr. Lafferty all her records that she was aware of at the relevant times and thought were pertinent to her tax return. Although petitioner may have been negligent in not turning over all her Forms 1099 to Mr. Lafferty, we do not find that she withheld *75 the Forms 1099 intending to conceal interest income or the related bank accounts. Except for her effort to quash the summons issued in the criminal investigation, petitioner appears to have cooperated with the taxing authorities who contacted her, particularly before the audit started. Within 1 month of receiving the matching letter, Mr. Lafferty responded to it on behalf of petitioner by asking respondent to calculate the 1984 tax and to send a bill, and petitioner filed amended State returns for 1984 and 1985, filed an amended Federal return for 1985, and paid the taxes owed as shown on the amended returns. [6] Petitioner's actions are not evidence of a failure to cooperate with the tax authorities. Instead, her actions evidence her desire to cooperate by correcting past mistakes promptly after they were brought to her attention. *76 Respondent produced no evidence that petitioner falsified her Forms W-4. Neither did respondent attempt to show that petitioner failed to make estimated tax payments. To the contrary, petitioner appears to have timely filed her tax returns and currently paid all taxes that appeared to be due. Petitioner owns and operates a restaurant, a cash-intensive business. However, respondent did not allege that petitioner acted fraudulently when she underreported her income from the restaurant. We find that, although petitioner had significant cash transactions, none of them evidence a fraudulent attempt to underreport interest income. Respondent did not allege that petitioner participated in any illegal activities or that she tried to conceal an illegal activity. It is clear that petitioner underreported her interest income, but no such indicia of fraud were present as would provide clear and convincing evidence that the interest income was omitted with intent to evade tax. Although petitioner's omissions of interest income were substantial, they alone do not provide clear and convincing evidence that petitioner intended to evade tax. Petitioner's explanations for her failures to *77 report all her interest income were neither implausible nor inconsistent, and the circumstances surrounding petitioner's omissions of interest income are as consistent with innocent mistake as with willful evasion. The other indicia of fraud that we have considered are inconclusive or show a lack of fraudulent intent, and, as indicated above (see supra pp. 10-12), respondent has not shown us how either petitioner's omissions of the cash deposits or her explanations thereof bear on her intent with respect to the interest omissions. Because the record taken as a whole does not support a finding of fraud by clear and convincing evidence, respondent has not carried her burden of proof on this issue, and petitioner's 1983, 1984, and 1985 income taxes may not be assessed at any time on account of fraud. Issue 1(c) Statute of Limitations -- 25-Percent Omission
Respondent, having failed to prove fraud by clear and convincing evidence, argues that the statutory notice was timely for 1983 and 1985 because petitioner omitted more than 25 percent of her reported gross income for those years. To prevail under this exception to the statute of limitations, respondent need prove the *78 requisite omission of income by no more than a preponderance of the evidence. Armes v. Commissioner, 448 F.2d at 974-975. In computing gross income for the purpose of the 6-year statute of limitations, receipts from a trade or business are not reduced by cost of sales. Sec. 6501(e)(1)(A)(i). [7]
Bank deposits standing alone do not give rise to a "logical presumption" that they are income, Armes v. Commissioner, supra at 974, but if the bank deposits are connected to a likely source of income, the finder of fact may properly conclude that they are income, Holland v. United States, 348 U.S. at 137-138; *79 Kramer v. Commissioner, 389 F.2d at 239. Although respondent did not offer clear and convincing evidence that the cash deposits came from the restaurant's gross receipts, the size and frequency of the cash deposits indicate a regular source of cash, consistent with the operation of a cash-intensive business, such as a restaurant. In addition, respondent negated or cast serious doubts on the nontaxable sources suggested by petitioner. See Holland v. United States, supra at 135-136; Kramer v. Commissioner, supra at 239. Therefore, we find that, more likely than not, the cash deposits in issue were from the gross receipts of the restaurant and that respondent carried her burden of proof under section 6501(e) by providing a sufficient connection between the cash deposits in issue and a likely source of income. See infra pp. 23-30. For 1983, petitioner omitted $ 130,817 from income, which is 40 percent of the gross income reported on her return. For 1985 petitioner filed an amended return, which increased her gross income by $ 26,287. However, we ignore the amended return when *80 applying section 6501(e). Badaracco v. Commissioner, 464 U.S. at 394; Houston v. Commissioner, 38 T.C. 486, 489 (1962) (applying sec. 275(c) of the 1939 Code, the predecessor to sec. 6501(e)). For 1985, petitioner omitted $ 148,987 of income from her original tax return, which is 41.4 percent of the gross income reported on that return. Because petitioner omitted more than 25 percent of her income for 1983 and 1985, the 6-year statute of limitations applies to both years. Respondent mailed the notice of deficiency for 1985 well within the 6-year period, but the 6-year period for assessment of the 1983 tax normally would have expired before respondent issued the statutory notice of deficiency. However, on August 29, 1988, respondent served Mr. Lafferty with a summons, which pertained to 1983, and on September 16, 1988, petitioner filed a petition to quash the summons. The District Court denied the petition on February 2, 1989, and petitioner did not appeal. Mr. Lafferty complied with the summons on February 9, 1989. When a taxpayer begins a proceeding to quash a summons in which she is identified, the period of limitations *81 is tolled during the period that the proceeding and appeals are pending. Sec. 7609(e). The parties agree that the period of limitations was tolled by the petition to quash, but they disagree on the duration. Petitioner argues that the period of limitations was tolled until Mr. Lafferty complied with the summons, 147 days. Respondent argues that the tolling continued until the period allowed for appeal expired, 200 days. We agree with respondent. In Hefti v. Commissioner, 97 T.C. 180 (1991), affd. 983 F.2d 868 (8th Cir. 1993), we addressed the same issue and found that section 301.7609-5(b), Proced. & Admin. Regs., [8] was valid and that compliance with the summons did not end the tolling of the limitations period. Id. at 200. *82 Petitioner contended that the tolling ends at the earlier of full compliance or lapse of the appeal period. Like the taxpayers in Hefti, petitioner relied on United States v. Porter, 711 F.2d 1397 (7th Cir. 1983) (predating the adoption of section 301.7609-5(b), Proced. & Admin. Regs.), United States v. Orlowski, 808 F.2d 1283 (8th Cir. 1986) (the summoned parties did not comply with the summons), and United States v. Meyer, 808 F.2d 1304 (8th Cir. 1987) (the summoned parties did not comply with the summons). Like the Court in Hefti, we find these cases irrelevant to the present case and hold that the limitations period was tolled until the appeal period expired, without regard to Mr. Lafferty's compliance with the summons. Because respondent mailed the statutory notice of deficiency for 1983 within 6 years plus 200 days from the due date of the 1983 tax return, it was timely issued. Because the statutory notice of deficiency was timely issued, assessments of tax for 1983 and 1985 are not blocked by the statute of limitations. Issue 2. Bank Deposits Method of Determining *83 Unreported Income
Respondent used the bank deposits method to reconstruct petitioner's income. Respondent used the reconstructed income to determine petitioner's deficiencies and to prove that petitioner omitted more than 25 percent of her income from her 1983 and 1985 tax returns. The Commissioner has considerable freedom to select a method to test for unreported income. Holland v. United States, 348 U.S. at 131-132; Campbell v. Guetersloh, 287 F.2d 878, 880 (5th Cir. 1961). The bank deposits method is a longstanding court-recognized method to recompute income, Marcello v. Commissioner, 380 F.2d 494, 496 (5th Cir. 1967), affg. in part, revg. in part and remanding in part T.C. Memo. 1964-302; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977), and we have not found any reason to disallow its use in this case. Petitioner generally has the burden of proof in civil tax cases. Rule 142(a). However, when petitioner pleads the statute of limitations, respondent has *84 the burden of proving an exception. Philipp Bros. Chemicals, Inc. v. Commissioner, 52 T.C. 240, 254 (1969), affd. 435 F.2d 53 (2d Cir. 1970); Bardwell v. Commissioner, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963); Cruz v. Commissioner, T.C. Memo. 1990-594. Petitioner pleaded the statute of limitations as a defense, and we have found that respondent did not carry her burden of proof that the fraud exception to the statute of limitations applied. Therefore, to be permitted to assess the tax for 1983 and 1985, respondent must prove, by a preponderance of the evidence, that petitioner omitted 25 percent of her income. Bank deposits standing alone do not give rise to a "logical presumption" that they are income. Armes v. Commissioner, 448 F.2d at 974. To carry her burden of proof, the Commissioner can either connect the bank deposits to a likely source of taxable income or negate the nontaxable sources alleged by the taxpayer. Kramer v. Commissioner, 389 F.2d at 239; *85 Parks v. Commissioner, 94 T.C. 654, 661 (1990) (describing how the Commissioner must satisfy the burden of proving an underpayment by clear and convincing evidence, a heavier burden than required here). In this case, respondent has shown a connection between the cash deposits and a likely source of income. This is sufficient to prove, by a preponderance of the evidence, that the cash deposits were income to petitioner. In addition, we have serious doubts about the nontaxable sources asserted by petitioner. Most of the deposits in issue were between $ 5,000 and $ 10,000, and seldom were two deposits made during the same month. This pattern of deposits indicates that petitioner was receiving regular cash payments throughout the years in issue. Although the evidence is not clear and convincing that the cash came from the restaurant's receipts, [9] it appears to be more likely than not that petitioner was taking cash from the restaurant's gross receipts. *86 Petitioner contends that the unreported cash was not gross receipts. She contends that friends and relatives gave it to her, either for her to invest on their behalves or as gifts. However, petitioner did not provide the Court with any contemporaneous records to support her contentions, and we have not been persuaded that petitioner's friends and relatives were the source of the deposits and expenditures in issue. [10] Cf. Kang v. Commissioner, T.C. Memo. 1993-601 (taxpayer's assertions of loan transactions supported by contemporaneous records).
Hong Bin Chin is not related to petitioner *87 but is a good friend and employee of petitioner. He testified that he gave petitioner "money" during 1983, $ 10,000 in January, $ 15,000 in February, and $ 15,000 in June. On October 28, 1983, Mr. Chin drew a $ 5,088 check, payable to the restaurant. On May 15, 1984, Mr. Chin drew a $ 8,547 check, payable to the restaurant. He testified that petitioner would return the money at any time, although there was no evidence that he ever asked for or received any. Assuming that Mr. Chin meant cash when he said "money", we have not been persuaded that the money that Mr. Chin gave petitioner was the source of any of the cash deposits. None of the deposits in issue was made in January, February, or March 1983. Although two of the deposits in issue were made in April 1983, they were both for lesser amounts, $ 5,000 and $ 7,000. The cash deposited in June 1983 totaled only $ 6,000. Petitioner did not show how the checks that Mr. Chin gave to petitioner were the source of any of the cash deposits. Both checks were endorsed "for deposit only Hong Kong Restaurant", and petitioner did not explain how the checks were relevant to the cash deposits. We have not been persuaded that any of *88 the money or checks that Mr. Chin gave to petitioner were included in the cash deposits in issue. Ken Sang Young testified that, during 1985, he gave petitioner $ 30,000, $ 10,000 in each of June, September, and December. The record is not clear whether Mr. Young gave this money to petitioner as part of a "dopxur" (savings pool) or for petitioner to invest for him. He said he thought petitioner was a "lucky lady" and that she could earn him more money than he could earn by himself. However, we have not been persuaded that any of the money that Mr. Young gave to petitioner was included in the cash deposits in issue. Assuming that Mr. Young gave petitioner $ 30,000 in cash, none of the deposits in issue is for the same amount as Mr. Young's alleged payments. The June 12, 1985, deposit was only $ 3,500, and although the July 2, 1985, deposit was $ 20,000, petitioner has not shown the source of the additional cash. None of the deposits in issue was made during September or December 1985. None of the deposits made during October or November 1985, was for $ 10,000, and petitioner has not explained why Mr. Young's alleged payments were not promptly deposited when received. We have *89 not been persuaded that the payments from Mr. Young were the source of any of the cash deposited. Respondent asserts that, during the audit, petitioner contended that she received some of the cash deposited from her ex-father-in-law prior to his death in the 1970s. In so contending, petitioner may have been saying that she had a cash hoard. However, petitioner did not make that argument to this Court, and we decline to speculate about the existence of a cash hoard. We do not find that any of the money received from petitioner's ex-father-in-law was the source of any of the cash deposits in issue. Petitioner contended that she received $ 17,000 from her mother as a gift. To substantiate her contention, petitioner brought a letter to trial. The letter purportedly said that petitioner's mother was giving (or gave) petitioner $ 17,000 from a certain account. However, the letter was written in Chinese, and the interpreter could not read it. We find only that petitioner contends that she received a letter evidencing a gift from her mother. During the audit, petitioner provided respondent with copies of her parents' bank accounts from the Manhattan Savings Bank, and contended that *90 her parents gave her the money from these accounts. However, petitioner was mistaken. Almost all the money in these accounts was transferred to other accounts held in her parents' names, and none of the money in these accounts was given to petitioner. Petitioner did not provide any evidence that her mother's gift was made in cash. Assuming that there was a cash gift, none of the deposits in issue is in the amount of $ 17,000, and petitioner did not explain why the $ 17,000 was not deposited at one time. We have not been persuaded that any of the cash deposits were from cash given to petitioner by her mother. Petitioner contended that she received $ 90,000 in cash from her father during a trip to New York. Petitioner did not produce any evidence of the trip to New York, and it is unclear when she made the trip. However, petitioner's father died in 1984, so if he gave her any money, she must have received it in 1983 or 1984. However, none of the deposits in issue is in the amount of $ 90,000, and petitioner did not explain why the $ 90,000 was not deposited at one time. We have not been persuaded that any of the cash deposits was from cash given to petitioner by her father. *91 In general, we are skeptical of connections that petitioner drew between alleged nontaxable sources and the cash deposits. Petitioner's witnesses did not testify that they gave cash to petitioner. They did not describe the terms of their investments with petitioner, nor did they provide sufficient explanations about how they accumulated the money that they invested with petitioner. However, even if petitioner's witnesses had been more credible, petitioner did not draw a sufficient connection between the money she allegedly received from them and the cash deposits in issue. She did not provide contemporaneous records. She did not explain why she held, sometimes for considerable time, money from nontaxable sources before depositing it, and then deposited it piecemeal. Petitioner also did not trace the money from her friends into investments for her friends, nor did she show when, whether, and in what form she returned the money and its avails. Because the cash deposits were connected to a likely source of income and the nontaxable sources contended by petitioner were doubtful, we find that respondent has proven, by a preponderance of the evidence, that the cash deposits in issue *92 were income to petitioner. Issue 3(a) Section 6653(b)(1) and (2) Additions -- Fraud
For all 3 years in issue, respondent determined additions to tax for fraud based on petitioner's omissions of interest income. Respondent must prove fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The definition of fraud for the purposes of section 6501(c)(1) is the same as the definition of fraud for the purposes of section 6653(b). See Schaffer v. Commissioner, 779 F.2d 849, 857 (2d Cir. 1985), affg. in part and remanding Mandina v. Commissioner, T.C. Memo. 1982-34; Williamson v. Commissioner, T.C. Memo. 1993-246. For purposes of extending the period of limitations under section 6501(a), we have not found fraud. See supra pp. 12-20. Therefore, for the purposes of the additions to tax under section 6653(b), we do not find fraud. [11]
*93 Issue 3(b) Section 6661 Additions -- Substantial Understatement
For all 3 years in issue, respondent also determined additions to tax for substantial understatements under section 6661, but we have determined that the period of limitations expired for 1984. If there is a substantial understatement of income tax for 1983 or 1985, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to the understatement for that year. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown or $ 5,000. Sec. 6661(b)(1)(A). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return, but the understatement will be reduced if the taxpayer either had substantial authority for, or adequately disclosed, the tax treatment shown on the return. Sec. 6661(b)(2). Respondent's determination of the addition is presumed to be correct, and petitioner bears the burden of proving that she is not liable for the addition. Rule 142(a). If the taxpayer shows that there was reasonable cause for the understatement and that she acted in good faith, *94 the Secretary may waive all or any part of the addition to tax under section 6661(a). Sec. 6661(c). The taxpayer must prove that the Secretary abused her discretion by denying the waiver of the section 6661(a) addition to tax. Mailman v. Commissioner, 91 T.C. 1079, 1083 (1988). To meet this burden petitioner must show (i) that she requested a waiver under section 6661(c), Klieger v. Commissioner, T.C. Memo. 1992-734, (ii) that respondent refused the request, id., and (iii) that reasonable cause and good faith are so clear that respondent's refusal to waive the addition to tax was arbitrary, capricious, or without sound basis in fact, Mailman v. Commissioner, supra at 1084. Petitioner did not provide any evidence to show that she had authority for the understatements of income on her 1983 and 1985 income tax returns, and the returns did not disclose them. Petitioner did not provide any evidence that she made a request for a waiver or that respondent had denied any such request. Even if petitioner had requested a waiver of the additions to tax that respondent had denied, petitioner *95 did not show reasonable cause for the understatements. Consequently, respondent's determinations of section 6661(a) additions to tax for 1983 and 1985 will be sustained, subject to recomputation under Rule 155. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest payable on $ 9,566 of the underpayment.↩
2. 50 percent of the interest payable on $ 11,890 of the underpayment.↩
1. Respondent did not determine or plead additions to tax for negligence under sec. 6653(a) as an alternative to the additions to tax for fraud.↩
2. The interpreter also translated the testimony of petitioner's witnesses, Hong Bin Chin and Ken Sang Yung.↩
3. Respondent may not have believed that she could provide clear and convincing evidence that the omissions of the cash deposits contributed to the underpayments of tax, or she may not have believed that she could provide clear and convincing evidence that the cash deposits were omitted with the intent to evade tax (the two prongs of a finding of fraud, see infra↩ p. 13). Additional facts regarding the cash deposits in issue might have supported a finding that they were omitted fraudulently and in turn might have caused the omissions of the cash deposits to be found to be so interdependent with the omitted interest income that respondent could have woven together the omissions of the two types of income into a pattern of fraud. However, no such facts were alleged or provided, and we commend respondent for not pursuing fraud on income that she does not believe was omitted fraudulently.
4. As evidence of petitioner's fraudulent intent, respondent has referred to petitioner's allegedly false and misleading explanations of nontaxable sources of the cash deposits in issue. However, petitioner's explanations were plausible. We have found that respondent connected the cash deposits to a likely source of income and that petitioner did not connect the funds that she might have received from relatives and friends with the cash deposits in issue. However, petitioner raised sufficient doubt about the sources of the cash deposits to prevent a finding, by clear and convincing evidence, that the cash deposits were income.↩
5. The percentage omitted is significantly lower if gross income, as defined by sec. 6501(e)(1)(A), is used as the denominator of the fraction: 5.8 percent for 1983, 6.6 percent for 1984, and 7.3 percent for 1985. See infra↩ p. 20, where we find that assessment of the 1984 tax is barred by the statute of limitations because sec. 6501(e)(A)(1) defines gross income of the restaurant as, in effect, gross receipts.
6. Although an amended return does not purge a taxpayer's fraud, Badaracco v. Commissioner, 464 U.S. 386, 394↩ (1984), we have considered the subsequent voluntary correction as evidence of a lack of fraud.
7. It would appear that the applicability of this statutory concession to taxpayers caused respondent not to assert the 6-year statute of limitations in support of the deficiency determined for the taxable year 1984. Compare gross income reported on petitioner's 1984 income tax return (supra p. 5) with omissions from petitioner's 1984 income tax return (supra↩ pp. 2, 9).
8. Sec. 301.7609-5(b), Proced. & Admin. Regs., provides that "the statute of limitations may be suspended * * * until all appeals are disposed of, or until the expiration of the period in which an appeal may taken or a request for a rehearing may be made. Full compliance, partial compliance, and noncompliance have no effect on the suspension provisions."↩
9. Petitioner also attempted to establish that the cash deposits were not taken from the restaurant's receipts by showing that the restaurant's gross profits percentage was "acceptable" (if gross receipts were increased by the cash deposits, without a corresponding increase of cost of goods sold, the resulting gross profits percentage would be unrealistically high). At trial, petitioner attempted to introduce a nationwide analysis of retail restaurant businesses and to have Mr. Lafferty testify as an expert, without having satisfied the notice requirements of Rule 143(f)(1), and we sustained respondent's objection. Even if we had permitted the evidence and testimony, we would not have found it probative. The analysis of retail restaurant businesses was a nationwide study, and no definition of cost of goods sold was provided. Without more information, any comparison between the restaurant and the national survey would be meaningless. Petitioner attempted to qualify Mr. Lafferty as an expert on the basis of his accounting experience with restaurants. However, only limited evidence of Mr. Lafferty's experience was provided. Without further proof of Mr. Lafferty's qualifications, we would give little weight to his testimony as an expert.↩
10. Although neither party provided any affirmative proof tracing the source of the cash deposits in issue (i.e., to the restaurant or to the money from petitioner's friends and relatives), the circumstances of this case provide a sufficient connection between the cash deposits in issue and the restaurant, although not between the cash deposits in issue and the money from petitioner's friends and relatives.↩
11. Although petitioner may have been negligent in not providing Mr. Lafferty with Forms 1099 reporting the omitted interest income, respondent did not assert the sec. 6653(a)(1) addition to tax for negligence.↩